# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| AT&T MOBILITY LLC,<br><br>    Plaintiff,<br><br>v.<br><br>T-MOBILE USA INC.,<br><br>    Defendant. | CIVIL ACTION NO.4:22-CV-00760-ALM |

## PLAINTIFF'S RESPONSE TO DEFENDANT T-MOBILE USA, INC.'S
## MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(2)

Plaintiff AT&T Mobility LLC responds to Defendant T-Mobile USA, Inc.'s Motion to Dismiss the Complaint Pursuant to Rule 12(b)(2) as follows:

# TABLE OF CONTENTS

Introduction ..................................................................................................... 1

Legal Standard ............................................................................................... 2

Argument ......................................................................................................... 3

   I.   T-Mobile is subject to general jurisdiction. ............................................... 3

   II.   T-Mobile is subject to specific jurisdiction. .............................................. 8

       A.   T-Mobile purposefully availed itself of the privilege of doing business in Texas. ................................................................................................ 9

           1.   "BannedSeniors.com" is an interactive site through which T-Mobile enters into business transactions with Texans. .................................. 9

           2.   T-Mobile has minimum contacts with Texas. ............................... 12

               (a)   "BannedSeniors.com" targets Texas and Texans. .................. 13

               (b)   T-Mobile performs additional acts to avail itself of Texas. ..... 14

       B.   AT&T's claims arise out of or relate to T-Mobile's contacts. .................... 16

       C.   Exercising jurisdiction would be reasonable. ............................................ 17

   III.   Alternatively, AT&T moves for leave to conduct jurisdictional discovery. ....... 18

## TABLE OF AUTHORITIES

*Admar Int'l Inc. v. Eastrock, L.L.C.*, 18 F.4th 783 (5th Cir. 2021) ......................... passim

*Andra Grp., LP v. Bareweb Inc.*, No. 4:17-cv-00815, 2018 WL 2848985 (E.D. Tex. June 11, 2018) ................................................................................................. passim

*Brown v. Lippard*, 350 F. App'x 879 (5th Cir. 2009) ........................................................4

*Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471 (E.D. Tex. 2019) ...........2

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ..................................................................3

*Enovsys LLC v. T-Mobile USA, Inc.*, No. 2:21-cv-00368-JRG, 2022 WL 2161028 (E.D. Tex. June 14, 2022) ....................................................................................................6

*Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331 (5th Cir. 2020) ..........................1, 3, 8

*Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011) ........................................................4

*Garteiser Honea, P.C. v. Moskowitz*, No. 2:18-cv-00372-JRG, 2018 WL 6617780 (E.D. Tex. Dec. 18, 2018) ..................................................................................................5

*Gemstar Grp. USA, Inc. v. Ferragamo USA, Inc.*, No. H-08-1822, 2008 WL 4858363 (S.D. Tex. Nov. 10, 2008) ................................................................................................5

*Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S.  915 (2011) ...................................3

*Healix Infusion Therapy, Inc. v. Human Arc Corp. of Oh.*, No. H-08-cv-3262, 2009 WL 7326369 (S.D. Tex. July 13, 2009) ................................................................................15

*In re Comu*, No. 09-38820-SGJ-7, 2014 WL 3339593 (Bank. N.D. Tex. July 8, 2014)....4

*In re Toyota Hybrid Brake Litig*, No. 4:20-cv-127, 2021 WL 2805455 (E.D. Tex. July 6, 2021) ...............................................................................................................................15

*Joganik v. E. Tex. Med. Ctr.*, No. 6:19-cv-517-JCB-KNM, 2021 WL 6694455 (E.D. Tex. Dec. 14, 2021) ..................................................................................................................5

*Johnson v. TheHuffingtonPost.Com, Inc.*, 21 F.4th 314 (5th Cir. 2021), *petition for cert. filed* (July 28, 2022) ...........................................................................................12, 13, 14

*Lahman v. Nationwide Providers Solutions*, No. 4:17-cv-00305-ALM, 2018 WL 3035916 (E.D. Tex. June 19, 2018) ................................................................................2

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429 (5th Cir. 2014). ..................................18

*Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387 (E.D. Tex. 2022) ..................8

*Orica Explosives Tech., Pty., Ltd. v. Austin Powder Co.*, No. 2:06-cv-450-TJW, 2007 WL 1115238 (E.D. Tex. Apr. 13, 2007) .........................................................................8

*Sanders v. Univ. of Tex. Pan Am.*, 776 F. App'x 835 (5th Cir. 2019) ...............................4

*Sangha v. Navig8 Shipmanagement Private Ltd.*, 882 F.3d 96 (5th Cir. 2018) .................2

*Scrum Alliance, Inc. v. Scrum, Inc.*, No. 4:20-cv-00227, 2020 WL 4016110 (E.D. Tex. July 16, 2020) ................................................................................................16, 17, 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .................................... 5

*Transplace Tex., L.P. v. Higgins*, No. 4:10-cv-428, 2011 WL 623172, (E.D. Tex. Jan. 19, 2011) ................................................................................................................ 1, 3, 8

*United States ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673 (W.D. Tex. 2006) ...................................................................................................................... 7, 8

*Variant, Inc. v. Flexol Packaging Corp.*, No. 6:08-cv-478, 2009 WL 3082581 (E.D. Tex. Sept. 21, 2009) ................................................................................................... 12

*Veracity Rsch. Co. v. Bateman*, No. 3:07-cv-2158-L, 2008 WL 2951910 (N.D. Tex. Aug. 1, 2008) ..................................................................................................................... 18

## INTRODUCTION

T-Mobile falsely advertises to senior citizens in Texas through its website "BannedSeniors.com." To skirt an injunction and avoid accountability in this Court, T-Mobile asks the Court to dismiss AT&T's complaint for lack of personal jurisdiction because it is supposedly a stranger to this forum. This argument strains credulity. T-Mobile has corporate offices in Frisco with more than a thousand employees, over a hundred retail locations throughout Texas, two stores less than ten miles from the Paul Brown Courthouse, hundreds if not thousands of retail workers in Texas, and cell towers and infrastructure across the State providing wireless services and internet in Texas. T-Mobile also sells services and products to Texans and injects products into the stream of commerce in Texas. Moreover, "BannedSeniors.com" is an interactive website that expressly targets Texas senior citizens to entice them to switch their wireless service from AT&T to T-Mobile.

Under settled precedent from both this Court and the Fifth Circuit, T-Mobile is subject to general jurisdiction because its extensive operations in Texas and use of Texas as one of three corporate hubs make it "at home" here. *See Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 339–40 (5th Cir. 2020); *Transplace Tex., L.P. v. Higgins*, No. 4:10-cv-428, 2011 WL 623172, at *7 (E.D. Tex. Jan. 19, 2011). T-Mobile is also subject to specific jurisdiction because "BannedSeniors.com" is a highly interactive website that targets Texas consumers, and T-Mobile purposefully availed itself of the privilege of doing business here. *Admar Int'l Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 785–88 (5th Cir. 2021); *Andra Grp., LP v. Bareweb Inc.*, No. 4:17-cv-00815, 2018 WL 2848985, at *5–6 (E.D.

Tex. June 11, 2018). For either or both reasons, the Court should deny T-Mobile's motion to dismiss.

## LEGAL STANDARD

To defeat T-Mobile's motion, AT&T need only make a *prima facie* showing that the court has personal jurisdiction. *Sangha v. Navig8 Shipmanagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). T-Mobile mounted a facial, rather than factual, attack on personal jurisdiction because it challenged AT&T's pleadings alone without attaching any supporting evidence. In determining whether a *prima facie* showing has been made, the Court accepts AT&T's allegations as true. *Lahman v. Nationwide Providers Solutions*, No. 4:17-cv-00305-ALM, 2018 WL 3035916, at *4 (E.D. Tex. June 19, 2018) (cleaned up) ("When considering the motion to dismiss, allegations in a plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits.").

Because the Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution, "the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees." *Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471, 477 (E.D. Tex. 2019) (citations omitted). "The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant" when the defendant has "minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* Minimum contacts may "be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction." *Id.*

ARGUMENT

**I.    T-Mobile is subject to general jurisdiction.**

"General jurisdiction exists over a non-resident defendant when its 'affiliations with the State are so continuous and systematic as to render them essentially at home in the forum state.'" *Frank*, 947 F.3d at 336 (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction for foreign corporations is often associated with the corporation's state of incorporation and principal place of business. *Id.* at 337. But this is not an exhaustive list, and corporations may be subject to general jurisdiction in fora beyond those two locations. *Id.* The key inquiry is merely whether the corporation is "at home" in the forum state. *Id.* A corporation is "deemed 'at home' when 'the continuous corporate operations within a state are so substantial and of such a nature as to justify suit on causes of action arising from dealings entirely distinct from those activities.'" *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)).

This means that a corporation's "affiliations with the forum state must approximate physical presence." *Id.* at 339. To assess physical presence, courts consider whether a foreign company has physical operations, employees, registered agents, licenses or permits, offices, or real estate in the forum state, as well as whether the entity maintains accounts or pays taxes in the forum state. *Id.*; *see also Transplace*, 2011 WL 623172, at *7 (holding defendant was subject to general jurisdiction because it was "registered to do business in Texas," had "two physical presences in Texas," and "four employees in Texas, one of which" was an executive VP of sales).

Here, the extent, nature, and duration of T-Mobile's presence in Texas leave no doubt that it is at home here and thus subject to general jurisdiction. *See, e.g.*, Doc. 1,

3

Compl. ¶¶ 16–17. AT&T requests that the Court take judicial notice of these contacts under Federal Rule of Evidence 201. T-Mobile maintains a Texas registered agent, pays Texas franchise taxes, and has been registered to do business in Texas since 1999.[1]  *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (noting district court properly took judicial notice of public records in ruling on a motion to dismiss); *In re Comu*, No. 09-38820-SGJ-7, 2014 WL 3339593, at *45 n. 915 (Bankr. N.D. Tex. July 8, 2014) ("The Court may take judicial notice of these public tax records.").

T-Mobile's business operations in Texas are expansive. Indeed, T-Mobile highlighted its extensive Texas presence in a court filing nearly ten years ago:

> Through the prominent, long, and continuous use in commerce, including commerce within the State of Texas, the Magenta Mark has become and continues to be famous and distinctive throughout Texas.

*T-Mobile US, Inc., et al. v. AIO Wireless, LLC*, No. 4:13-cv-02478 (S.D. Tex.), Doc. 1, Compl. ¶ 64); *see Sanders v. Univ. of Tex. Pan Am.*, 776 F. App'x 835, 837–38 (5th Cir. 2019) ("It is well settled that courts may take judicial notice of matters of public record, like the complaint [filed by plaintiff in separate litigation]."); *Brown v. Lippard*, 350 F. App'x 879, 883 n.2 (5th Cir. 2009) (noting courts may take judicial notice of, among other things, records and pleadings from separate litigation). T-Mobile's Texas operations have only grown since then.

---

[1] https://direct.sos.state.tx.us/corp_inquiry/corp_inquiry-entity.asp?spage=docs&:Spagefrom=&:Sfiling_number=12958406&:Ndocument_number=1178877790002&:Npgcurrent=1&:Norder_item_type_id=10 (last visited Sept. 20, 2022) (registered agent and corporate registration); https://mycpa.cpa.state.tx.us/coa/coaSearchBtn# (last visited Sept. 20, 2022) (franchise tax).

T-Mobile has extensive physical operations in Texas, including towers and infrastructure that offer wireless service and internet across the state:



https://www.t-mobile.com/coverage/coverage-map (last visited Sept. 20, 2022); *see Gemstar Grp. USA, Inc. v. Ferragamo USA, Inc.*, No. H-08-1822, 2008 WL 4858363, at *7 (S.D. Tex. Nov. 10, 2008) (taking judicial notice of defendant's website, and the contents and links contained in it, to assess forum contacts in analyzing personal jurisdiction); *see also Garteiser Honea, P.C. v. Moskowitz*, No. 2:18-cv-00372-JRG, 2018 WL 6617780, at *2 (E.D. Tex. Dec. 18, 2018) (taking judicial notice of contents of defendant's website to conduct jurisdictional analysis).[2] In the past year alone, T-Mobile has advertised further expansion in Texas, claiming that it had "expan[ded] T-Mobile Home Internet in 57 cities

---

[2] Taking judicial notice of T-Mobile's website does not affect the presumption of truth attached to AT&T's allegations. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting that when ruling on a 12(b)(6) motion where plaintiff's allegations are taken as true, a court may consider "matters of which a court may take judicial notice"); *Joganik v. E. Tex. Med. Ctr.*, No. 6:19-cv-517-JCB-KNM, 2021 WL 6694455, at *11 (E.D. Tex. Dec. 14, 2021) (taking judicial notice of defendant's website and statements on website in ruling on 12(b)(6) motion).

and towns across Texas"—including "Sherman-Denison." https://www.t-mobile.com/news/network/t-mobile-home-internets-bigger-clap-clap-clap-clap-deep-in-the-heart-of-texas (Jan. 19, 2022).

T-Mobile also operates hundreds of retail locations throughout Texas, with hundreds if not thousands of retail employees:



https://www.t-mobile.com/store-locator/tx. Two T-Mobile stores are within ten miles of this Court. *Id.*

Beyond retail locations, "T-Mobile also has corporate operations in this District in Frisco." *Enovsys LLC v. T-Mobile USA, Inc.*, No. 2:21-cv-00368-JRG, 2022 WL 2161028, at *1 (E.D. Tex. June 14, 2022); *see also Nodal Tech. LLC v. T-Mobile US, Inc. and T-*

*Mobile USA, Inc.*, No. 2:22-cv-00176-JRG (E.D. Tex.), Doc. 7, Answer ¶ 7 ("T-Mobile admits that T-Mobile USA, Inc. maintains an office space at 7668 Warren Parkway, Frisco, Texas. T-Mobile admits that T-Mobile USA, Inc. has retail stores in Allen, Longview, Plano, and Tyler, Texas.").

Indeed, T-Mobile's SEC filings identify Frisco as one of only three locations in the United States where it maintains corporate offices; the two others are Overland Park, Kansas and Bellevue, Washington. https://sec.report/Document/0001283699-21-000039/ (last visited Sept. 20, 2022) ("As of December 31, 2020, we owned and leased . . . office space totaling approximately 1.3 million square feet for our corporate offices located in Bellevue, Washington [and] office space totaling approximately 2.0 million square feet for our corporate offices located in Overland Park, Kansas and Frisco, Texas."); *United States ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006) (noting courts "have the power to take judicial notice of Securities and Exchange Commission ('SEC') filings").

T-Mobile's Frisco corporate office was recently expanded and purportedly houses over 1,500 workers, including "workers from T-Mobile marketing, IT, engineering, human resources and finance." *Hundreds of Metro by T-Mobile workers moving to new Frisco headquarters*, Dallas Morning News (Mar. 18, 2020, 5:32 pm), https://www.dallasnews.com/business/real-estate/2020/03/18/hundreds-of-t-mobile-workers-moving-to-new-frisco-headquarters/; *Metro by T-Mobile Moving Headquarters to Frisco*, D Magazine (Mar. 18, 2020, 6:22 pm), https://www.dmagazine.com/business-economy/2020/03/metro-by-t-mobile-moving-headquarters-to-frisco/; *Lam*, 481 F. Supp.

2d at 680 ("Courts have the power to take judicial notice of the coverage and existence of newspaper and magazine articles.").

Simply put, T-Mobile identifies Texas as one of three corporate hubs. *Cf. Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 396–97 (E.D. Tex. 2022) (assessing contacts for general jurisdiction "in the context of the company's overall activity"). T-Mobile has had an extensive and persistent physical and business presence in Texas for over 20 years. *Frank,* 947 F.3d at 339. It operates a vast network of towers and infrastructure, has hundreds of physical locations and thousands of employees, sells products and services to Texans, pays Texas taxes, and maintains Texas permits and registrations. *Id.*

These contacts render T-Mobile "at home" in Texas and, as a result, subject to general jurisdiction. *See id.*; *see also Transplace*, 2011 WL 623172, at *7 (holding defendant was subject to general jurisdiction because it was "registered to do business in Texas," had "two physical presences in Texas," and "four employees in Texas, one of which" was an executive VP of sales); *Orica Explosives Tech., Pty., Ltd. v. Austin Powder Co.*, No. 2:06-cv-450-TJW, 2007 WL 1115238, at *2 (E.D. Tex. Apr. 13, 2007) (finding general jurisdiction when defendant maintained office space and employees in Texas, and was registered to do business here). For this reason alone, the Court should deny T-Mobile's motion.

## II.   T-Mobile is subject to specific jurisdiction.

Courts in the Fifth Circuit apply a three-part test to determine whether specific jurisdiction exists. *Admar*, 18 F.4th at 786. Here, AT&T must first show that T-Mobile has minimum contacts with Texas—that it purposefully directed its activities at Texas and

availed itself of the privilege of doing business here. *Id.* Second, AT&T must show that its cause of action arises from, or is directly related to, T-Mobile's contacts with Texas. *Id.* Third, if AT&T satisfies the first two steps, then T-Mobile must show that exercising jurisdiction would prove unfair or unreasonable. *Id.*

### A.   T-Mobile purposefully availed itself of the privilege of doing business in Texas.

To determine personal jurisdiction based on a website such as "BannedSeniors.com," courts in the Fifth Circuit apply the *Zippo* factors. *See, e.g.*, *Andra Group*, 2018 WL 2848985, at *5–6. First, the Court assesses the website's interactivity. *Id.* If, as here, the website is not passive, the Court then analyzes the defendant's forum contacts. *Id.* At bottom, however, *Zippo* seeks to answer a simple question: "Has the defendant targeted the forum state? The touchstone of personal jurisdiction remains the existence of some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Admar*, 18 F.4th at 786. And here, the answer to that question is plainly yes.

### 1.   "BannedSeniors.com" is an interactive site through which T-Mobile enters into business transactions with Texans.

"Under the *Zippo* sliding-scale test, a passive website, which only allows the owner of the website to post information, is not sufficient to establish personal jurisdiction." *Andra Group*, 2018 WL 2848985, at *5. At the other end of the scale is an interactive website "whose owners engage in online contacts with forum residents through the site." *Id*. An interactive website that engages with forum residents "will likely meet the minimum contacts requirement." *Id.* In the middle of the scale are "websites with some interactive elements [that] allow for bilateral information exchange." *Id*. When determining whether

these websites have sufficient minimum contacts with the forum, "the Court must examine the interactivity and nature of the forum contacts." *Id.* (citations omitted).

"BannedSeniors.com" satisfies "the high-end of the *Zippo* sliding scale by entering into business transactions with customers in this district—*i.e.* the sale of merchandise to customers from [the] website." *Id.*; *see* Doc. 1, Compl. ¶¶ 16–17. T-Mobile offers no evidence to the contrary. Nor could it. The newly revised site invites senior Texans to "Shop T-Mobile's 55+ plans now":



https://www.bannedseniors.com/ (last visited Sept. 20, 2022). Clicking "Shop T-Mobile's 55+ plans now" takes consumers to a page allowing them to, among other things, shop for wireless plans, wireless phones, and accessories:



[https://www.t-mobile.com/cell-phone-plans/unlimited-55-senior-discount-plans](https://www.t-mobile.com/cell-phone-plans/unlimited-55-senior-discount-plans) (last

visited Sept. 20, 2022). This means that "BannedSeniors.com" alone "will likely meet the

minimum contacts requirement." *Andra Group*, 2018 WL 2848985, at *5.

"BannedSeniors.com" is also highly interactive. The same linked page allows senior

Texans to, among other things, interact with T-Mobile customer service representatives,

call T-Mobile, log into and manage user accounts, check order status, redeem rebates,

switch mobile service to T-Mobile, and pay bills. [https://www.t-mobile.com/cell-phone-plans/unlimited-55-senior-discount-plans](https://www.t-mobile.com/cell-phone-plans/unlimited-55-senior-discount-plans) (last visited Sept. 20, 2022); *see Andra Group*,

2018 WL 2848985, at *5 (finding website was "highly interactive" when users could

contact owner, obtain shipping information, sign up for emails and follow blogs, track

orders, create accounts, and contact experts and receive advice); *see Variant, Inc. v. Flexol*

11

*Packaging Corp.*, No. 6:08-cv-478, 2009 WL 3082581, at *1 (E.D. Tex. Sept. 21, 2009) (finding website was interactive when it allowed users to enter contact information).

In sum, "BannedSeniors.com" "satisfies both the high end of the *Zippo* sliding scale by entering into business transactions with customers in this district" and "the intermediate level of the *Zippo* sliding scale by being a highly interactive website." *See Andra Group*, 2018 WL 2848985, at *5. Thus, T-Mobile meets the minimum contacts requirement for specific jurisdiction in Texas.

### 2.    T-Mobile has minimum contacts with Texas.

The crux of T-Mobile's argument against specific jurisdiction is that nationwide accessibility of a website cannot support specific jurisdiction in Texas. Doc. 18, Mot. Dismiss at 9–11. This argument, which relies primarily on media libel opinions, mischaracterizes AT&T's allegations and applicable law. *See, e.g.*, *id.* at 11 (citing *Johnson v. TheHuffingtonPost.Com, Inc.*, 21 F.4th 314, 319–20 (5th Cir. 2021), *petition for cert. filed* (July 28, 2022)).

First, specific jurisdiction is proper even under T-Mobile's proffered test because "BannedSeniors.com" expressly targets Texas. Second, this is not a media libel suit about a one-off article published nationwide. It is a Lanham Act suit about false advertising of goods and services sold in Texas to Texans. *See, e.g.*, Doc. 1, Compl. ¶¶ 16–17. And as T-Mobile's own authority recognizes, that changes the analysis. *Cf. Johnson*, 21 F.4th at 320 ("Johnson says that HuffPost sells merchandise to Texans. But that doesn't matter. Johnson complains about a written article, not articles of clothing. Branded tees and coffee mugs

have nothing to do with Johnson's libel claim, so they cannot support claim-specific jurisdiction.").

When claims are based on a defendant's commercial website accessible in Texas, and the defendant purposefully avails itself of the opportunity to do business in Texas, then Texas courts have specific jurisdiction. *Admar*, 18 F. 4th at 787. This Court's opinion in *Andra Group*—which T-Mobile does not cite, let alone distinguish—made that plain. 2018 WL 2848985, at *5–6. The Fifth Circuit reaffirmed that point in the last year (and within weeks of T-Mobile's lead authority, *Johnson*) in *Admar*, another opinion that T-Mobile fails to address. Accordingly, and for the reasons detailed below, T-Mobile has sufficient minimum contacts with Texas.

(a)     **"BannedSeniors.com" targets Texas and Texans.**

Media libel precedent on minimum contacts is more restrictive than normal precedent on minimum contacts, including Lanham Act cases like this one. *Compare Johnson*, 21 F.4th at 321 ("What matters is whether HuffPost aimed *the alleged libel* at Texas."), *with Andra Group*, 2018 WL 2848985, at *5–6 (engaging in wholistic minimum contacts assessment to determine whether defendant was subject to specific jurisdiction for Lanham Act violations). Thus, media libel opinions, which require that the statements at issue target the forum state, should not guide the Court's analysis here. *Johnson*, 21 F.4th at 319 ("For Texas to have jurisdiction, we concluded, the article had to target Texas specifically and knowingly."). Even so, "BannedSeniors.com" satisfies this stricter standard because T-Mobile's website targets Texas and Texans.

T-Mobile claims that AT&T banned "senior discounts outside of Florida." https://www.bannedseniors.com (last visited Sept. 20, 2022). Based on that false claim, T-Mobile suggests that seniors can "get around . . . AT&T's ludicrous practices" by "switch[ing] to T-Mobile." *Id*. T-Mobile published a map expressly targeting Texas, as one of the states on the map "outside of Florida," to induce senior Texans to switch their wireless service from AT&T to T-Mobile:



*Id*.; *see also* Doc. 1, Compl. ¶ 17. In so doing, T-Mobile "specifically and knowingly" targeted Texas to make the false statement that AT&T banned senior discounts here. Even under T-Mobile's incorrect standard,  it  is subject to specific jurisdiction here. *See, e.g.*, *Johnson*, 21 F.4th at 318–19.

(b)    **T-Mobile performs additional acts to avail itself of Texas.**

When, in addition to an interactive website, defendants perform other "acts to purposefully avail themselves of the forum state, such as advertising, conducting business transactions with residents of the forum state, and soliciting funds from residents in the forum state, there is sufficient support to find personal jurisdiction over the defendants." *Andra Group*, 2018 WL 2848985, at *6.

As detailed above, T-Mobile undertakes all these acts in Texas. "BannedSeniors.com" advertises to Texans. T-Mobile has not only substantial corporate

operations in Texas, but hundreds of retail locations that conduct business with and solicit funds from Texans—including senior Texans in Sherman and Denison. T-Mobile sells phones and other devices from those locations, injecting products into the Texas stream of commerce. *See Healix Infusion Therapy, Inc. v. Human Arc Corp. of Oh.*, No. H-08-cv-3262, 2009 WL 7326369, at *7 (S.D. Tex. July 13, 2009) (noting that the Fifth Circuit applies stream of commerce principles "with equal force" to "Lanham Act claims"); *In re Toyota Hybrid Brake Litig*, No. 4:20-cv-127, 2021 WL 2805455, at *6 (E.D. Tex. July 6, 2021) (citations omitted) ("When courts in the Fifth Circuit apply the stream-of-commerce theory, the minimum contacts prong is satisfied so long as the court finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.").

What's more, AT&T alleges that Texans access "BannedSeniors.com" and that T-Mobile has gained sales in Texas from that access. Compl. ¶¶ 17; *see also Andra Group*, 2018 WL 2848985, at *6 ("Defendants have been found to have purposefully directed their activities to forum residents where forum residents use the allegedly infringing website in the forum. Also, defendants have been found to have purposefully directed their activities to forum residents when defendants generate income from forum residents."). "BannedSeniors.com" directly links to pages offering interactions with customer service representatives. *Id.* ("Websites that offer customer service options to forum residents also have been considered to be purposefully directed at forum residents.").

Simply put, T-Mobile does not merely run a website that is accessible in Texas. *Cf. Admar*, 18 F.4th at 788. It purposefully avails itself of the opportunity to do business in

Texas and has deployed "BannedSeniors.com" to bolster that business through false advertisements at AT&T's expense. The contacts detailed above are more than enough to subject T-Mobile to specific jurisdiction. *Cf. id.* at 787 ("[A] defendant does not have sufficient minimum contacts with a forum state just because its website is accessible there. The defendant must also target the forum state by purposefully availing itself of the opportunity to do business in that state."). This Court's holding in *Andra Group* drives that point home:

> Andra claims that Bareweb sells its products to customers in this district through its allegedly infringing website that presumably generates income from this district's residents. Additionally, Bareweb offers services and support to customers in this district. Accordingly, the Court finds Bareweb has the requisite minimum contacts to be subject to specific personal jurisdiction in Texas.

2018 WL 2848985, at *6. For all these reasons, T-Mobile purposefully availed itself of the opportunity to do business in Texas. *See Scrum Alliance, Inc. v. Scrum, Inc.*, No. 4:20-cv-00227, 2020 WL 4016110, at *5 (E.D. Tex. July 16, 2020) (citations omitted) ("Defendants . . . who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulations and sanctions in the other state for consequences of their actions.").

### B.   AT&T's claims arise out of or relate to T-Mobile's contacts.

AT&T's Lanham Act claims arise from T-Mobile's false advertisements on "BannedSeniors.com" and the harm those false advertisements have caused and will cause AT&T. "BannedSeniors.com" targets Texas and invites senior Texans to "switch to T-Mobile" from AT&T in Texas. https://www.bannedseniors.com (last visited Sept. 20,

16

2022). That switching happens as a direct result of the extensive Texas contacts detailed above, from hundreds of T-Mobile retail locations to sell the services and products that allow Texans to make the switch, to towers and other infrastructure that make T-Mobile's 55+ plans possible, to corporate offices, payment of taxes, and upkeep of certificates and registrations that support T-Mobile's Texas operations. Accordingly, AT&T's claims arise out of or relate to T-Mobile's contacts. *See, e.g.*, *Scrum Alliance*, 2020 WL 4016110, at *7 ("Defendant SI has established minimum contacts with Texas. And Plaintiff's trademark-infringement claim arises out of or results from those contacts. So the court has the power to issue Plaintiff's requested preliminary injunction . . .").

## C.   Exercising jurisdiction would be reasonable.

"'It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown.'" *Scrum Alliance*, 2020 WL 4016110, at *4. But "[t]his is not one of those rare cases." *Id.* at 8. T-Mobile offers no evidence to the contrary.

T-Mobile faces little to no burden litigating in Texas, especially given its corporate presence here. *Id.* at 4, 8 ("Defendant SI has spent significant time in Texas and . . . also earned significant revenue from its forum contacts."). This is especially true considering the amount of litigation both that T-Mobile has filed here as plaintiff, or in which T-Mobile has consented to jurisdiction as defendant. *See, e.g.*, *T-Mobile US, Inc., et al. v. AIO Wireless, LLC*, No. 4:13-cv-02478 (S.D. Tex.); *see also Nodal Tech. LLC v. T-Mobile US, Inc. and T-Mobile USA, Inc.*, No. 2:22-cv-00176-JRG (E.D. Tex.), Doc. 7, Answer ¶ 6 (consenting to jurisdiction).[3]

---

[3] *See also, e.g.*, *Cedar Land Tech., Inc. v. T-Mobile USA, Inc.*, No. 6:20-cv-00988-ADA (W.D. Tex.), Doc. 14, Answer ¶ 5 (admitting that T-Mobile "has engaged in systematic and continuous business activities in

Texas has a vested interest in protecting its citizens—especially its senior citizens—from false advertising. *Scrum Alliance*, 2020 WL 4016110, at *8 ("If Defendant SI is committing trademark infringement within Texas as plaintiff claims, Texas and its citizens have a strong interest in this dispute."); *Veracity Rsch. Co. v. Bateman*, No. 3:07-cv-2158-L, 2008 WL 2951910, at *6 (N.D. Tex. Aug. 1, 2008) ("Texas has a substantial interest in protecting its citizens from trademark infringement, unfair competition, and libel."). AT&T's "interest in convenient and effective relief is furthered by litigating this action in Texas." *Veracity Research*, 2008 WL 2951910, at *6. So too is the general interest in "efficient resolution of the conflict." *Id.*

For all these reasons, T-Mobile's "argument that the Court's exercise of specific personal jurisdiction over it would offend 'fair play and substantial justice' is erroneous." *Scrum Alliance*, 2020 WL 4016110, at *8.

## III.   Alternatively, AT&T moves for leave to conduct jurisdictional discovery.

Trial courts have broad discretion in deciding whether to allow jurisdictional discovery. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014). If the Court is inclined to grant T-Mobile's motion to dismiss, AT&T requests leave to conduct jurisdictional discovery into (1) T-Mobile's continuous and systematic contacts with the State of Texas through its extensive operations here and (2) T-Mobile's interactions with and sales to Texans through its "BannedSeniors.com" advertising campaign.

---

this District . . . for purposes of this action only"); *Traxcell Tech., LLC v. T-Mobile USA, Inc.*, No. 2:17-cv-00720-RWS-RSP (E.D. Tex.), Doc. 8, Answer ¶ 4 ("T-Mobile admits that this Court has personal jurisdiction over T-Mobile in this action."); *Evans v. T-Mobile USA, Inc.*, No. 4:15-cv-00578-ALM (E.D. Tex.), Doc. 4, Answer ¶¶ 3–4 (consenting to jurisdiction and venue in Sherman); *Persiano v. T-Mobile USA, Inc.*, No. 4;14-cv-00504-ALM (E.D. Tex.), Doc. 10, Answer ¶¶ 4–5 (admitting that T-Mobile "has transacted business in this district" and consenting to jurisdiction and venue in Sherman).

**CONCLUSION**

T-Mobile is subject to general jurisdiction because its extensive operations in Texas and use of Texas as one of three corporate hubs make it "at home" here. T-Mobile is also subject to specific jurisdiction because "BannedSeniors.com" is a highly interactive website that targets Texas and T-Mobile purposefully availed itself of the privilege of doing business here, AT&T's claim arises from those contacts, and the exercise of jurisdiction would be reasonable. For either or both reasons, the Court should deny T-Mobile's motion to dismiss.

Respectfully submitted,


By:____/s/ Pete Marketos_____
        Pete Marketos
         State Bar No. 24013101
         pete.marketos@rm-firm.com
        Tyler J. Bexley
         State Bar No. 24073923
         tyler.bexley@rm-firm.com
        Jamison M. Joiner
         State Bar No. 24093775
         jamison.joiner@rm-firm.com

**REESE MARKETOS LLP**
750 N. Saint Paul St., Suite 600
Dallas, Texas 75201-3202
214.382.9810 telephone
214.501.0731 facsimile

**ATTORNEYS FOR PLAINTIFF AT&T
MOBILITY LLC**


## CERTIFICATE OF SERVICE

The undersigned certifies that, on September 20, 2022, the foregoing document was submitted to the clerk of the U.S. District Court, Eastern District of Texas, using the electronic case filing system (CM/ECF) of the court.  I certify that the document was served on all known counsel of record electronically as authorized by Federal Rule of Civil Procedure 5(b)(2).


_/s/ Pete Marketos_____
Pete Marketos