**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| AT&T MOBILITY LLC, <br><br> Plaintiff, <br><br> v. <br><br> T-MOBILE USA INC., <br><br> Defendant. | Civil Action No. 4:22-CV-00760 <br><br> **JURY TRIAL DEMANDED** |

**T-MOBILE USA, INC.'S SUR-REPLY IN FURTHER OPPOSITION TO AT&T**
**MOBILITY LLC'S APPLICATION FOR A PRELIMINARY INJUNCTION**

## PRELIMINARY STATEMENT

Over just five pages, AT&T's reply accuses T-Mobile of "gaslighting" (ECF 22 ("Reply") at 1), "gamesmanship" (*id.*), "semantic trick[s]" (*id.*), "sleight of hand" (*id.* at 2), and "redefin[ing] English," among other insults.  (*Id.* at 1.)  Yet, for all its sound and fury, AT&T's reply is most notable for what it does not say.  AT&T does not dispute that it offers a 55+ discount plan only to seniors in Florida.  Nor does it dispute that a consumer's age has no bearing on eligibility for AT&T's AARP member discount.  Those silent concessions are fatal to AT&T's motion for a preliminary injunction.

In its opposition, T-Mobile explained that a "senior discount" is a "discount[] available exclusively to seniors based on their age."  (ECF 19 ("Opp.") at 1.)  In other words, *a discount given to seniors because they are seniors*.  T-Mobile then showed that AT&T cannot prevail on the merits of its Lanham Act claim because it has not established (or even claimed) that it offers any such discounts outside of Florida.

AT&T's reply does not rebut that dispositive showing.  AT&T instead offers its own definition of a "senior discount" as *any* "discount available to seniors," without regard to (1) whether all seniors can get the discount, and (2) whether the discount is equally available to everyone, not just seniors.  (Reply at 3.)  That definition would make *every* discount for which seniors are not categorically ineligible a "senior discount."  That is not a reasonable definition and not how it is used in T-Mobile's challenged advertisement.  But, even if that were *one* reasonable definition of "senior discount," it is not the *only* reasonable definition.  To show that T-Mobile's statement that AT&T bans senior discounts outside of Florida is literally false—AT&T's only theory of falsity—AT&T must show that its interpretation is the *only reasonable interpretation* of T-Mobile's statement.  And the statement cannot be viewed in isolation—it must be viewed in the context of the entire advertisement, which makes its intended meaning even clearer.

In sum, to establish a likelihood of success on the merits here, AT&T must show that the only message consumers would take away from T-Mobile's advertisement is that AT&T categorically excludes seniors outside of Florida from receiving *any* discounts on their wireless service whatsoever, because of their age.  AT&T does not come close to such a showing. Accordingly, the court should deny AT&T's motion for preliminary injunction.

## ARGUMENT

## I.  AT&T IS NOT LIKELY TO SUCCEED ON THE MERITS OF ITS LANHAM ACT CLAIM

### A.  The Website Does Not Convey An Unambiguous, False Statement

AT&T argues that the Website conveys two unambiguously false messages: (1) that AT&T bans senior discounts; and (2) that consumers 55 and over cannot get a wireless discount from AT&T unless they live in Florida.  (Reply at 1.)  AT&T does not dispute that it does not offer a "senior discount" outside of Florida as T-Mobile uses that phrase on the Website.  AT&T instead: (a) repeatedly attacks T-Mobile's definition of senior discount; (b) mischaracterizes the content and message of the Website; and (c) argues that it is in any event literally false to describe its decision not to provide senior discounts outside of Florida as a "ban."  Each argument fails.

*First*, AT&T cannot show that it is unreasonable to interpret the phrase "senior discount," as it appears on the Website, as a discount for which age is the eligibility requirement.  AT&T, in fact, never attempts to explain *why* that interpretation would be unreasonable.  Nor could it. Understanding a "senior discount" as one that is available to all consumers over a threshold age is both intuitive and common.  Indeed, many businesses advertise "senior" discounts that are available to any person over a specified age.[1]

---

[1]   *See, e.g.*, Marriot Bonvoy, *How Do I Reserve a Senior Discount Rate?* https://help.marriott.com/s/article/Article-21994 ("The Marriott Senior Discount Program is

AT&T posits that the phrase "senior discount" means only "a discount available to seniors." (Reply at 3.) But AT&T's definition would sweep in discounts that, like AT&T's AARP member discount, do not depend in any way on the consumer's age. AT&T's AARP member discount qualifies under AT&T's definition because seniors, along with anyone else, can join AARP and apply for the discount. The AARP member discount, in other words, is "available to seniors" under AT&T's definition even though being a senior is neither necessary (any age can join AARP) nor sufficient (a senior cannot get the discount without paying to join AARP) to qualify for the discount. Indeed, virtually any wireless discount would be a "senior discount" as defined by AT&T, so long as it did not explicitly exclude seniors based on their age. For example, AT&T's AutoPay discount,[2] which gives customers of any age a discount for setting up recurring payments, would qualify, as would hypothetical discounts offered only to members of a particular political party or people who bought a particular automobile. For that reason, no reasonable consumer would read the phrase senior discount to mean any discount available to a senior.

But even if *some* consumers might interpret the statement the way AT&T suggests, AT&T still could not succeed on the merits. If a statement is subject to more than one reasonable interpretation, it cannot be literally false. (*See* Opp. at 8); *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir. 2016). AT&T must show that no reasonable consumer would interpret "senior discount" as an age-based discount. It cannot make that showing. Accordingly,

---

offered to all Guests **62 years of age and older** . . . An AARP Membership is not required nor applicable for the Senior Rate; Rate eligibility is based on age.") (emphasis in original) (last visited Sept. 22, 2022); Amtrak, Passenger Discounts for Seniors, https://www.amtrak.com/seniors-discount ("Amtrak travelers 65 years of age and over are eligible to receive a 10% discount on most rail fares on most Amtrak trains.") (last visited Sept. 22, 2022); AMC Theatres, Seniors Save on Tickets, https://www.amctheatres.com/discounts (explaining "guests 60+ can save on tickets all day, every day") (last visited Sept. 22, 2022).

[2] *See* AT&T, https://www.att.com/support/article/my-account/KM1009352/ (last visited Sept. 22, 2022).

even accepting AT&T's definition as plausible, T-Mobile's statements that AT&T does not offer senior discounts outside of Florida would be, at most, ambiguous.  AT&T thus cannot show that T-Mobile's statements are literally false.

*Second*, AT&T's continued reliance on the challenged statement that seniors outside of Florida "cannot get a wireless discount" from AT&T is misplaced.  As explained in T-Mobile's opposition brief, that statement has been further clarified to explicitly refer to the "55+ discount" (Opp. at 11), so the original language is irrelevant to AT&T's request for a preliminary injunction.  Regardless, the context surrounding that statement in its original form made clear that T-Mobile was referencing senior or 55+ discounts, not all wireless discounts.  (Opp. at 9, 11); *Good Sportsman Mktg. LLC v. Non Typical, Inc.*, No. 6:07CV177, 2008 WL 11348379, at *2 (E.D. Tex. May 8, 2008) (statements must be read in their "overall context").  AT&T's claim that the change "highlights the obvious falsity of T-Mobile's original claim" is meritless.  (Reply at 3.)

*Third*, the Website's description of AT&T's decision not to provide senior or 55+ discounts outside Florida as a "ban" is not literally false.  AT&T attempts to distinguish a "ban" on senior discounts from a "decision not to offer" those discounts by citing a dictionary definition of "ban" as "prohibit."  (Reply at 1-2.)  But that is a reasonable reading of the way T-Mobile uses the phrase. AT&T "bans," *i.e.* "prohibits," its customers outside of Florida from receiving senior discounts on their wireless service, because AT&T chooses to make such discounts available only in Florida. Moreover, other dictionaries define "ban" differently.  For example, the Cambridge Dictionary's definition of "ban" includes "refuse to allow,"[3] which again describes AT&T's actions.

---

[3] *See* Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/ban (last visited Sept. 22, 2022).

AT&T likens its decision to deny non-Floridians access to its Unlimited 55+ discount plan to a library not offering "every book ever published." (Reply at 2 n.3.) Even accepting the flawed analogy, AT&T has and offers the relevant "book" here—*i.e.*, its Unlimited 55+ plan. AT&T has simply decided to prohibit everyone other than Florida residents from accessing that "book." AT&T has not identified any false message that a consumer could take from the Website's use of the word "ban." Even if it had, at a minimum, the statement would be ambiguous and therefore not literally false. *See, e.g.*, *Healthmate Int'l, LLC v. French*, 255 F. Supp. 3d 908, 918 (W.D. Mo. 2017) ("Only an unambiguous message can be literally false. When an ad can reasonably be understood as conveying different messages, a literal falsity argument must fail.").

### B.   AT&T Cannot Establish the Other Elements of its Lanham Act Claim

AT&T concedes that, without literal falsity and the presumptions that accompany it, AT&T cannot satisfy the other elements of its Lanham Act claim. Because AT&T cannot demonstrate a likelihood of success in establishing that the Website is literally false, it cannot establish that it is likely to succeed on the merits of its claim.

## II.   AT&T IS NOT ENTITLED INJUNCTIVE RELIEF

AT&T does not appear to dispute that it is not entitled to injunctive relief if it cannot establish a likelihood of success on the merits of its claim. (Reply at 5.) In any event, AT&T cannot meet the "heavy burden" of satisfying all four elements necessary to obtain injunctive relief, and it is not entitled to the "extraordinary" remedy of an injunction. (Opp. at 6, 14-15); *Anderson v. Douglas & Lomason Co.*, 835 F.2d 128, 133 (5th Cir. 1988).

## <u>CONCLUSION</u>

Based on the foregoing, T-Mobile respectfully requests this Court deny AT&T's application for a preliminary injunction.

Dated:  September 22, 2022

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By:_____/s/ Craig B. Whitney_____
       Craig B. Whitney*
       Molly G. Rothschild*
       Kristen Niven*

28 Liberty Street, 35th Fl.
New York, NY 10005
(212) 980-0120
cwhitney@fkks.com
mrothschild@fkks.com
kniven@fkks.com

*Admitted *pro hac vice*

GILLAM & SMITH LLP
Melissa R. Smith
J. Travis Understood
303 South Washington Avenue
Marshall, Texas 75670
(903) 934-8450
melissa@gillamsmithlaw.com
travis@gillamsmithlaw.com

*Attorneys for Defendant T-Mobile USA, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that all counsel of record who have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 22, 2022.

*/s/ Melissa R. Smith*