# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| AT&T MOBILITY LLC,<br><br>        Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC.,<br><br>        Defendants. | Civil Action No. 4:22-CV-00760 |

**DEFENDANT T-MOBILE USA, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(2)**

**TABLE OF CONTENTS**

                                                                       **Page**

I.    T-MOBILE IS NOT SUBJECT TO GENERAL PERSONAL JURISDICTION IN THIS DISTRICT ..................................................................................1

        A.    AT&T Mobility Misapplies the Standard for General Personal Jurisdiction..................................................................................................1

        B.    The Facts Show that T-Mobile Is Not "At Home" in Texas...................................2

II.   T-MOBILE IS NOT SUBJECT TO SPECIFIC JURISDICTION FOR THE CLAIMS ALLEGED IN THIS LAWSUIT ................................................................5

        A.    The Claims Arise Out of Only Passive Components of the Website ......................6

        B.    T-Mobile's Advertising Campaign Does Not Target Texas...................................7

        C.    AT&T Mobility's Claims Do Not Arise From T-Mobile's Forum Contacts.....................................................................................................................9

        D.    The Reasonableness Prong Also Favors T-Mobile...............................................10

III.  CONCLUSION..........................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Admar Int'l, Inc. v. Eastrock, L.L.C.*,
   18 F.4th 783 (5th Cir. 2021) ..........................................................................................8, 9

*Alpine View Co. v. Atlas Copco AB*,
   205 F.3d 208 (5th Cir. 2000) ........................................................................................8, 10

*Andra Grp., LP v. BareWeb, Inc.*,
   No. 4:17-CV-00815, 2018 WL 2848985 (E.D. Tex. June 11, 2018) ..................................9, 10

*BNSF Railway Company v. Tyrrell*,
   137 S. Ct. 1549 (2017).............................................................................................2, 3, 4, 5

*Calder v. Jones*,
   465 U.S. 783 (1984)..............................................................................................................7

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)...............................................................................................1, 2, 5, 10

*Dymatize Enterprises, Inc. v. Maximum Hum. Performance, Inc.*,
   No. 3:09-CV-1840-O, 2010 WL 972240 (N.D. Tex. Feb. 28, 2010) ........................................7

*Frank v. PNK (Lake Charles) L.L.C.*,
   947 F.3d 331 (5th Cir. 2020) ........................................................................................2, 3, 5

*Franklin v. Apple Inc.*,
   569 F. Supp. 3d 465 (E.D. Tex. 2021)..................................................................................4

*Ham v. La Cienega Music Co.*,
   4 F.3d 413 (5th Cir. 1993) ..................................................................................................10

*Intellect Design Arena, Inc. v. DataCubes Inc.*,
   No. CV1912184ESSCM, 2020 WL 2832568 (D.N.J. June 1, 2020) ........................................7

*U.S. ex rel. Lam v. Tenet Healthcare Corp.*,
   481 F. Supp. 2d 673 (W.D. Tex. 2006).................................................................................4

*Lovelace v. Software Spectrum Inc.*,
   78 F.3d 1015 (5th Cir. 1996) ................................................................................................4

*Monkton Ins. Servs., Ltd. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) ................................................................................................2

*Nafta Traders, Inc. v. Hewy Wine Chillers, LLC*,
　No. 3:18-CV-2773-L, 2019 WL 5184135 (N.D. Tex. July 23, 2019) ....................................... 3

*Novak v. Overture Servs., Inc.*,
　309 F. Supp. 2d 446 (E.D.N.Y. 2004) ................................................................................... 6, 7

*Nunes v. NBCUniversal Media, LLC*,
　582 F. Supp. 3d. 387 (E.D. Tex. 2022) ................................................................... 3, 5, 8, 10

*Rawls v. Old Republic Gen. Ins. Grp., Inc.*,
　489 F. Supp. 3d 646 (S.D. Tex. 2020) ....................................................................................... 3

*Repairify, Inc. v. AirPro Diagnostics, LLC*,
　No. CV H-19-1370, 2019 WL 7987116 (S.D. Tex. July 15, 2019) ........................................... 6

*Revell v. Lidov*,
　317 F.3d 467 (5th Cir 2002) ................................................................................................. 7, 8

*Torson v. Hyundai Oilbank Co.*,
　No. 4:21-CV-00778, 2022 WL 79649 (S.D. Tex. Jan. 7, 2022), *aff'd*, No. 22-
　20065, 2022 WL 4103263 (5th Cir. Sept. 7, 2022) ................................................................... 3

*Walden v. Fiore*,
　571 U.S. 277 (2014) ................................................................................................................ 10

*World Triathlon Corp. v. Zefal, Inc.*,
　No. 8:05CV659T24MAP, 2006 WL 4690989 (M.D. Fla. Apr. 18, 2006) ............................ 6, 7

**Statutes**

Lanham Act ................................................................................................................................ 7, 9

**Other Authorities**

Fed. R. Civ. P. 12(b)(2) ............................................................................................................... 10

T-Mobile is not subject to general jurisdiction here because it is not headquartered or incorporated in Texas. The Supreme Court has made clear that due process does not establish general jurisdiction over corporations other than in those two locales even with extensive forum contacts in other states, except under extremely rare circumstances that the Court has not found to exist in over 70 years. Nor does this Court have specific personal jurisdiction over T-Mobile for these claims. AT&T Mobility again relies upon other websites and other Texas contacts not at issue in this dispute to establish jurisdiction. But when the Court focuses on the suit-related contacts—the only relevant contacts for specific jurisdiction purposes—they are not expressly directed at Texas and are insufficient to establish specific personal jurisdiction as well. The Court should, therefore, dismiss the complaint.

## I. T-MOBILE IS NOT SUBJECT TO GENERAL PERSONAL JURISDICTION IN THIS DISTRICT

Under the standard articulated by the Supreme Court in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), there is no general jurisdiction over T-Mobile in Texas. Even when considering the documents cited by AT&T Mobility—over which it improperly requests the Court take judicial notice as to the truth of their contents—AT&T Mobility fails to meet its burden of demonstrating that T-Mobile is "at home" in this forum.

### A. AT&T Mobility Misapplies the Standard for General Personal Jurisdiction

Since the *Daimler* decision, courts have found a corporate defendant is subject to general personal jurisdiction in only two places: (1) its state of incorporation; and (2) its principal place of business. That is all. T-Mobile is unaware of a *single case* finding a corporation subject to general jurisdiction anywhere else following *Daimler*. And AT&T Mobility cites none. All of the authority AT&T Mobility cited in response either finds no general jurisdiction or applies the pre-*Daimler* standard and is inapplicable.

As articulated in *Daimler*, and further clarified in *BNSF Railway Company v. Tyrrell*, 137 S. Ct. 1549 (2017), a foreign defendant's contacts with the forum must be "so 'continuous and systematic' as to render [it] essentially at home in the forum State" (*Daimler*, 571 U.S. at 119), and must be evaluated with a "corporation's activities in their entirety." *BNSF*, 137 S. Ct. at 1559 ("[a] corporation that operates in many places can scarcely be deemed at home in all of them"). The Fifth Circuit has reaffirmed this standard repeatedly. *See Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 337-38 (5th Cir. 2020) (general jurisdiction outside of a company's domicile "would have to be the 'exceptional case' where [defendant's] corporate operations are 'so substantial and of such a nature as to render the corporation at home' in that forum"); *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) ("It is, therefore, incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.").

As noted, AT&T Mobility cites no case since *Daimler* finding general jurisdiction over a corporation where it was neither incorporated nor headquartered in Texas. The Fifth Circuit, in fact, has observed that the Supreme Court has not upheld a single finding of general jurisdiction over a corporate defendant outside of its place of incorporation or principal place of business *since 1952*. *Frank*, 947 F.3d at 336.

Binding precedent governing the Court's exercise of general jurisdiction therefore holds that T-Mobile is not "at home" in Texas for the purposes of general personal jurisdiction.

### B.     The Facts Show that T-Mobile Is Not "At Home" in Texas

Seeking to make this case the only exception since *Daimler* to find that Texas is a corporation's home despite being headquartered and incorporated elsewhere, AT&T Mobility identifies (and, in some instances, misidentifies) several Texas contacts. That is not surprising: T-Mobile is the second-largest wireless carrier in the United States, with offices and employees

throughout the country.  Some of those offices and employees reside in Texas.  That presence, however, is insufficient under the law to convey general jurisdiction over T-Mobile in Texas.

*First*, the fact that T-Mobile is registered to do business in Texas is insufficient to render it "at home" in Texas.  *See Torson v. Hyundai Oilbank Co.*, No. 4:21-CV-00778, 2022 WL 79649, at *3 (S.D. Tex. Jan. 7, 2022), *aff'd*, No. 22-20065, 2022 WL 4103263 (5th Cir. Sept. 7, 2022).

*Second*, although AT&T Mobility alleges that T-Mobile has cell towers, retail stores, and employees in Texas, AT&T Mobility does not argue that any of these contacts make T-Mobile's presence greater in Texas than anywhere else in the U.S.  *See Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d. 387, 396-97 (E.D. Tex. 2022) (explaining that a court must consider contacts in context of nationwide presence); *Rawls v. Old Republic Gen. Ins. Grp., Inc.*, 489 F. Supp. 3d 646, 660 (S.D. Tex. 2020) ("Substantial sales of goods, advertisement, and business registration, even with other contacts, have not been found to confer general jurisdiction.") (collecting cases).  Nor do the allegations that T-Mobile's trademark is "famous" in Texas or that T-Mobile pays Texas franchise taxes render T-Mobile "at home" in Texas.  *See, e.g.*, *Frank*, 947 F.3d at 334, 339-41 (no general jurisdiction over a Louisiana casino that "has long been an attractive venue to Texans" and targeted advertising to residents); *Nafta Traders, Inc. v. Hewy Wine Chillers, LLC*, No. 3:18-CV-2773-L, 2019 WL 5184135, at *5-6 (N.D. Tex. July 23, 2019), *report and recommendation adopted*, No. 3:18-CV-2773-L, 2019 WL 5186087 (N.D. Tex. Aug. 27, 2019) (no general jurisdiction even though defendant pays taxes in Texas).  If the result were otherwise, T-Mobile (and other large corporations) would likely be "at home" everywhere—which is precisely what the Supreme Court cautioned against.  *See BNSF*, 137 S. Ct. at 1559.

*Third*, AT&T Mobility argues incorrectly that T-Mobile's office in Frisco, Texas is "one of only three locations in the United States where it maintains corporate offices" and one of T-

3

Mobile's corporate "hubs." (ECF 21 ("Response") at 7-8.) In support, AT&T Mobility asks the Court to take judicial notice of T-Mobile's Form 10-K for the fiscal year ending on December 31, 2020. To begin with, the Court may take judicial notice of SEC filings only "for the purpose of determining what statements the documents contain, *not to prove the truth of the documents' contents*." *U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006) (internal citation omitted) (emphasis added).[1] Moreover, this document does not support that conclusion in any event. Nowhere does the Form 10-K state that the Frisco corporate office is one of only three T-Mobile corporate offices, or that it is a corporate "hub" or headquarters. In fact, the filing identifies that, in addition to the office spaces in Bellevue, Overland Park, and Frisco, T-Mobile maintains an *additional* three million square feet of office space "throughout the U.S. . . . for use by our regional offices." (T-Mobile, Form 10-K for the year ending Dec. 31, 2020, *available at* https://sec.report/Document/0001283699-21-000039/ (last accessed Sept. 28, 2022).)

In other words, T-Mobile has an office in Frisco, but it is not the company headquarters—which the Complaint acknowledges is in Bellevue, Washington—or any sort of "hub." As the Supreme Court recognized, for a location to be the surrogate principal place of business, it needs to effectively replace the actual principal place of business. *BNSF*, 137 S. Ct. at 1558 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)) (the exemplified surrogate principal place of business was where a foreign corporation relocated to Ohio during wartime). Maintaining

---

[1] AT&T Mobility also asks this Court to take judicial notice and accept as true the contents of local news articles about the Frisco office housing the "Metro by T-Mobile" brand, which is not the subject of this dispute. Again, judicial notice allows the Court to consider such documents "only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996); *Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 477 (E.D. Tex. 2021) (Mazzant, J.) ("Just because a document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.").

a corporate office or "operations" alone in the state is insufficient to render a company "at home" in that forum. *Nunes*, 582 F. Supp. 3d at 397; *Frank*, 947 F.3d at 336-37. As AT&T Mobility's own cited sources confirm, T-Mobile's corporate operations continue to be concentrated at its headquarters in Bellevue—where it is "at home." *See BNSF*, 137 S. Ct. at 1558; *Nunes*, 582 F. Supp. 3d at 397, 402.

Even aggregated, these identified contacts are insufficient to confer general jurisdiction in Texas. They are a consequence of doing business in Texas as a large, multistate corporation. The Court recently reached a similar conclusion applying *Daimler* and *BNSF* to find no general jurisdiction over NBC Universal, a large, multistate nonresident corporation with many corporate offices and retail locations throughout the country (including Texas) and products and services that indisputably reach Texas residents. *See Nunes*, 582 F. Supp. 3d at 387. As this Court found, despite those numerous, widespread contacts, NBCU had not made Texas its "surrogate principal place of business" such that it could be considered "at home" for the purpose of general jurisdiction. *See id.* at 396. There is likewise no general jurisdiction over T-Mobile in this forum.

## II.   T-MOBILE IS NOT SUBJECT TO SPECIFIC JURISDICTION FOR THE CLAIMS ALLEGED IN THIS LAWSUIT

As the Supreme Court recounted in *Daimler*, courts have increasingly focused on specific jurisdiction as the "centerpiece" of modern jurisdiction theory, that is, "the relationship among the defendant, the forum, *and the litigation*." 571 U.S. at 133 (emphasis added).

AT&T Mobility's argument for minimum contacts sufficient to establish specific jurisdiction focuses on three arguments: (1) the Website is "highly interactive"; (2) the Website "expressly" targets Texas; and (3) other, non-suit-related contacts with Texas are sufficient for specific jurisdiction. Each of these arguments fails.

5

### A. The Claims Arise Out of Only Passive Components of the Website

AT&T Mobility has not established that the Website is sufficiently interactive to satisfy minimum contacts for the purpose of the Court's exercise of specific jurisdiction over T-Mobile.

On its face, the Website passively informs consumers about AT&T Mobility's decision to prohibit non-Florida residents from receiving the senior discount offered to Floridians. The Website's statements that AT&T Mobility claims are literally false exist on static graphics or banners on the Website. AT&T Mobility does not claim otherwise. The Website is thus passive under the *Zippo* sliding-scale test. *See Repairify, Inc. v. AirPro Diagnostics, LLC*, No. CV H-19-1370, 2019 WL 7987116, at *6 (S.D. Tex. July 15, 2019) (the only content on defendant's website at issue was passive "static information posted by Defendant comparing the parties' products").

Nor does the Website itself allow consumers to buy products or services. Instead, to argue the Website falls on the interactive end of the *Zippo* sliding scale, AT&T misapplies the *Zippo* test and conflates the interactivity of *other* websites *linked* to the Senior Discount Website to claim that the Website itself is interactive. Indeed, the large website graphic appearing on half of page 11 of AT&T Mobility's Response is from a *different website*—T-Mobile's retail website. But AT&T Mobility does not claim that any statement on T-Mobile's retail website is false. The only statements at issue here are specific statements on the Senior Discount Website—which itself is not interactive. Where a plaintiff asserts a claim regarding a specific website, a court will evaluate the interactivity of *that* website to assess minimum contacts, not hyperlinked webpages that are not the subject of the claims. *See, e.g.*, *World Triathlon Corp. v. Zefal, Inc.*, No. 8:05CV659T24MAP, 2006 WL 4690989, at *7 (M.D. Fla. Apr. 18, 2006); *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 456 (E.D.N.Y. 2004) (finding linked retail websites do not render the website at issue interactive).

Even if the Court were to consider the linked website together with the Website for the purposes of determining minimum contacts, it should only consider the *case-relevant parts* of the Website to determine whether those parts are sufficiently interactive to establish purposeful availment. *See Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir 2002). Under that analysis, the relevant parts of the Website remain passive and do not establish minimum contacts with Texas. *See World Triathlon Corp.*, 2006 WL 4690989, at *7; *Novak*, 309 F. Supp. 2d at 446.

### B. T-Mobile's Advertising Campaign Does Not Target Texas

Contrary to AT&T Mobility's assertions, another appropriate test for analyzing whether the advertising statements at issue in this case are targeted at Texas sufficient to establish specific jurisdiction is the effects test articulated under *Calder v. Jones*, 465 U.S. 783, 789 (1984). *See Revell*, 317 F.3d at 471-72. In attempting to avoid this test, AT&T Mobility invents a legal theory that the *Calder* test is only applicable to media libel claims and that media libel has a higher constitutional bar for minimum contacts than other cases. (Response at 13.) There is, of course, no legal authority for that position. AT&T Mobility does not cite a single case holding the effects test inapplicable to false advertising cases. To the contrary, several false advertising cases have applied the effects test in their jurisdictional analysis. *See, e.g.*, *Intellect Design Arena, Inc. v. DataCubes Inc.*, No. CV1912184ESSCM, 2020 WL 2832568, at *5 (D.N.J. June 1, 2020) (no personal jurisdiction in false advertising action where no evidence that advertisement was expressly aimed at forum); *Dymatize Enterprises, Inc. v. Maximum Hum. Performance, Inc.*, No. 3:09-CV-1840-O, 2010 WL 972240, at *7 (N.D. Tex. Feb. 28, 2010), *report and recommendation adopted*, No. 3:09-CV-1840-O-BH, 2010 WL 980996 (N.D. Tex. Mar. 16, 2010).

The application of the effects test to false advertising makes logical sense. AT&T Mobility bases its Lanham Act false advertising claim on a message that allegedly disparages AT&T Mobility that T-Mobile distributed through mass communication—the Website. These facts align

7

more closely with business tort and defamation-type claims for the purpose of minimum contacts than they do with products liability or trademark infringement claims. *See Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000) (questioning whether the stream-of-commerce theory should apply outside of products liability cases).

And while the effects test is "but one facet" of a minimum contacts analysis (*Revell*, 317 F.3d at 473), when considered in combination with the contacts analysis for the Website using the *Zippo* scale, it provides a more complete picture of why the exercise of personal jurisdiction over T-Mobile does not comport with due process—because the Website does not specifically target Texas or interact with Texas consumers. *Id.* at 471-72. AT&T Mobility seeks to avoid this test because it cannot overcome those facts.

Instead, AT&T Mobility merely states that "T-Mobile published a map expressly targeting Texas, *as one of the states on the map* 'outside of Florida,' . . ." (Response at 14 (emphasis added).) In support, AT&T Mobility includes this map—which is of the *entire continental United States*. (*Id.*) In other words, because the Website includes a U.S. map, and because Texas is one of the states on that map, the Website is "expressly targeting Texas." The flaw in that argument requires little explanation. The Website does not target Texas any more than any other state. T-Mobile, therefore, cannot have directed its activity at Texas specifically for the purpose of establishing minimum contacts. *See Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 785 (5th Cir. 2021).

Moreover, AT&T Mobility makes no attempt to rebut T-Mobile's demonstration under the effects test that: (1) Texas is not mentioned, targeted, or in any way a focal point of the website (*Revell*, 317 F.3d at 473-74; *Nunes*, 582 F. Supp. 3d at 399-400); and (2) the allegedly harmful effects on AT&T Mobility would be felt in its principal place of business, which is Georgia, not

8

Texas. (Mot. at 11.) Accordingly, AT&T Mobility cannot establish that T-Mobile purposely directed its Website at Texas.

### C. AT&T Mobility's Claims Do Not Arise From T-Mobile's Forum Contacts

Failing any other jurisdictional basis, AT&T Mobility misapplies other case law to seek to include non-suit-related contacts in the analysis. It cites to *Admar*, 18 F.4th at 785 and *Andra Grp., LP v. BareWeb, Inc.*, No. 4:17-CV-00815, 2018 WL 2848985 (E.D. Tex. June 11, 2018) for the assertion that "[w]hen claims are based on a defendant's commercial website accessible in Texas, and the defendant purposefully avails itself of the opportunity to do business in Texas, then Texas courts have specific jurisdiction." (Response at 13.) That is not what those cases hold.

The Fifth Circuit in *Admar* held that, to establish purposeful availment, the subject website *itself* must have targeted Texas. *Id.* at 787-88 (finding "a defendant does not have sufficient minimum contacts with a forum state just because its website is accessible there" in response to the plaintiffs' contention that the defendant's website "targets the entire United States, and so it necessarily targets" the forum). Here, as in *Admar*, the Website targets the U.S. generally. AT&T Mobility fails to demonstrate how the Website itself creates the necessary minimum contacts to establish personal jurisdiction over it for the purpose of this claim.

In *Andra Group*, this Court presided over a copyright infringement and Lanham Act trade dress infringement claim—not a false advertising claim—where the alleged infringement specifically involved the interactive customer service feature of the defendant's website. The Court's finding of specific jurisdiction rested in part on the fact that forum residents interacted with the allegedly infringing website and defendant purposefully transacted with residents through those same infringing interactive features, as well as the fact that the defendant purposefully copied and exchanged information with the plaintiff's website's servers in this district to create the

9

website in the first place.  *See* 2018 WL 2848985, at *5-6.  Thus, the defendant's interactions with the forum *through the website* constituted the purposeful availment.  *Id.*

Even under this analysis, AT&T Mobility cannot establish specific jurisdiction.  *See Alpine*, 205 F.3d at 215–17.  None of T-Mobile's contacts with Texas, which are purportedly the products T-Mobile places in the stream of commerce or its interactive retail website at www.tmobile.com, give rise to AT&T Mobility's false advertising claim.  *Id.*; *Ham v. La Cienega Music Co.*, 4 F.3d 413, 416 (5th Cir. 1993).  Without that tie between the claim and the contacts, AT&T Mobility cannot establish that this Court has specific jurisdiction over T-Mobile.  *See Daimler*, 571 U.S. at 133; *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (the specific jurisdiction analysis focuses on whether a "defendant's *suit-related conduct* . . . create[s] a substantial connection with the forum State") (emphasis added).

### D. The Reasonableness Prong Also Favors T-Mobile

Because AT&T Mobility cannot establish T-Mobile's requisite minimum contacts with the forum, or that its false advertising claim arises therefrom, T-Mobile does not bear the burden of demonstrating that exercise of personal jurisdiction over it would be unreasonable and unfair.  *Nunes*, 582 F. Supp. 3d at 401.  Nevertheless, as stated in T-Mobile's motion, the Court's exercise of personal jurisdiction over it would be neither reasonable nor fair because it would impose an unjustified burden on T-Mobile, Texas does not have a particular interest in adjudicating a commercial dispute between two nonresident corporations under federal law, and there are other available and more appropriate forums for these claims.  (Mot. at 13.)

### III. CONCLUSION

For the foregoing reasons, T-Mobile respectfully requests that the Court grant T-Mobile's motion under Rule 12(b)(2) and dismiss the complaint for lack of personal jurisdiction.

Dated: September 28, 2022

        FRANKFURT KURNIT KLEIN & SELZ, P.C.

        By: */s/ Craig B. Whitney*
        Craig B. Whitney*
        Molly G. Rothschild*
        Kristen G. Niven*
        28 Liberty Street 35th Fl.
        New York, NY 10005
        Tel: (212) 980-0120
        Fax: (212) 593-9175
        cwhitney@fkks.com
        mrothschild@fkks.com
        kniven@fkks.com
        *Admitted *pro hac vice*

        GILLAM & SMITH LLP
        Melissa R. Smith (Texas State Bar No. 24001351)
        melissa@gillsamsmithlaw.com
        J. Travis Underwood
        Texas Bar No. 24102587
        travis@gillamsmithlaw.com
        303 S. Washington Ave.
        Marshall, TX 75670
        Telephone: (903) 934-8450
        Facsimile: (903) 934-9257

        *Attorneys for Defendant T-Mobile USA, Inc.*

## **CERTIFICATE OF SERVICE**

    I hereby certify that all counsel of record who have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 28, 2022.

    */s/ Melissa R. Smith*