UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| AT&T MOBILITY LLC,<br><br>              Plaintiff,<br><br>v.<br><br>T-MOBILE USA INC.,<br><br>              Defendant. | CIVIL ACTION NO.4:22-CV-00760-ALM |

**PLAINTIFF'S SUR-REPLY TO DEFENDANT T-MOBILE USA, INC.'S
MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(2)**

## TABLE OF CONTENTS

Summary ............................................................................................................................1

Argument ...........................................................................................................................3

    I.      The pleadings and judicially noticeable facts—none of which T-Mobile has rebutted—reveal the extent of T-Mobile's Texas contacts ................................3

    II.     T-Mobile is subject to general jurisdiction. .......................................................6

    III.   T-Mobile is subject to specific jurisdiction. ......................................................7

           A.     T-Mobile cannot shield itself from liability by posting false advertisements to websites that link to its own retail page. .................7

           B.     "BannedSeniors.com" targets Texas .....................................................9

Conclusion .......................................................................................................................10

# SUMMARY

T-Mobile did not deny its myriad contacts with Texas and the Eastern District. It didn't offer evidence to rebut AT&T's allegations that it has a continuous and systematic business presence here and targets and does business with Texans through its interactive website "BannedSeniors.com."[1] It didn't counter judicially noticeable facts about the scope, extent, or duration of its Texas operations or sale of goods and services to Texans both online and in person. And it didn't even mention—let alone address—its repeated consent to personal jurisdiction in the Eastern District or admission of general jurisdiction in other Texas litigation.

As a result, AT&T's allegations are taken as true. *Lahman v. Nationwide Providers Sols.*, No. 4:17-cv-00305-ALM, 2018 WL 3035916, at *4 (E.D. Tex. June 19, 2018). Those allegations make a *prima facie* showing of both general and specific jurisdiction. *Id.* So T-Mobile's motion fails. The Court's analysis can stop here.

If the Court wishes to address T-Mobile's reply, most of it is spent rehashing the same flawed arguments pressed in its motion. The only new wrinkle T-Mobile raises is its suggestion that, because consumers must click a link to shop for T-Mobile's phones and plans, the false advertisements on "BannedSeniors.com" are somehow immune to this Court's jurisdiction. Doc. 27, Reply at 6–7. But as both T-Mobile's own authority and this Court's precedent make plain, that is incorrect. *Compare Novak v. Overture Servs, Inc.*, 309 F. Supp. 2d 446, 456 (E.D.N.Y. 2004) (cited in Reply at 6) (observing that link to *third parties'* "unrelated websites"—"such as Amazon.com"—that "sell goods" did not "itself

---

[1] T-Mobile has offered no evidence at all to rebut AT&T's jurisdictional allegations—just as it offered no witness or any other evidence during the injunction hearing before the Court.

. . . provide grounds for personal jurisdiction"), *with Luci Bags LLC v. Younique, LLC*, No. 4:16-cv-00377, 2017 WL 77943, at *4 (E.D. Tex. Jan. 9, 2017) (holding email was interactive and thus subjected defendant to personal jurisdiction "because it provided a link" *to the defendant's own* "order form specifically for" the product advertised).

More important, it is merely another try at muddying the waters on the basic, "touchstone" question before Court: should T-Mobile have reasonably anticipated that it would be haled into court for its conduct here? *Luci Bags*, 2017 WL 77943, at *2; *see also In re Toyota Hybrid Brake Litig.*, No. 4:20-cv-127-ALM, 2021 WL 2805455, at *9 (E.D. Tex. (July 6, 2021) (rejecting defendant's "procrustean and overly formalistic" characterization of its contacts because "the crux of a specific jurisdiction analysis is the defendant's actual conduct, not legal technicalities"). The answer is yes.

T-Mobile is subject to general jurisdiction because its continuous, systematic, and physical presence in Texas—considered in context with T-Mobile's activities and operations in Texas as a whole—renders it "at home" here. *Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 339–40 (5th Cir. 2020); *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 396–97 (E.D. Tex. 2022). T-Mobile is subject to specific jurisdiction because "BannedSeniors.com" is a highly interactive website that targets Texas consumers and T-Mobile purposefully availed itself of the privilege of doing business here. *Admar Int'l Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 785–88 (5th Cir. 2021); *Andra Grp., LP v. Bareweb, Inc.*, No. 4:17-cv-00815-ALM, 2018 WL 2848985, at *5–6 (E.D. Tex. June 11, 2018).

At bottom, defendants "who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulations and

sanctions in the other state for consequences of their actions." S*crum Alliance, Inc. v. Scrum, Inc.*, No. 4:20-cv-00227-ALM, 2020 WL 4016110, at *5 (E.D. Tex. July 16, 2020). T-Mobile falsely advertised to senior citizens in Texas through its website "BannedSeniors.com" and is profiting from Texans as a result. Now it should be held to account here.

## ARGUMENT

**I.   The pleadings and judicially noticeable facts—none of which T-Mobile has rebutted— reveal the extent of T-Mobile's Texas contacts.**

Most defendants moving to dismiss for lack of personal jurisdiction claim they lack contacts with the forum state. T-Mobile took a different tack, trying to skirt jurisdiction not by denying its contacts with Texas, but by suggesting that the Court should ignore them. *See, e.g.*, Doc. 27, Reply at 1, 4–5. T-Mobile's strategy is unfounded.

To start, and as mentioned above, T-Mobile did not rebut AT&T's allegations. So contacts that are themselves sufficient to confer jurisdiction are taken as true. These include AT&T's allegations that T-Mobile "is registered to business in the State of Texas," T-Mobile "does business in the State of Texas," "a substantial part of the events or omissions giving rise to AT&T's claims occurred in this district," T-Mobile's false advertising is "intended to reach and likely ha[s] reached consumers in this district," T-Mobile "operates numerous stores at various locations throughout this district," and those stores "are gaining . . . from T-Mobile's unlawful conduct." Doc. 1, Compl. ¶¶ 16–17.

What's more, the Court's assessment of T-Mobile's contacts is not constrained to AT&T's allegations in its complaint alone. The Court can and should consider both "BannedSeniors.com," which is part of the pleadings, and "matters of which a court may

3

take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007); *see also Tate v. Dallas Indep. Sch. Dist.*, 3:21-CV-0895-B-BH, 2022 WL 272711, at *6 (N.D. Tex. Jan. 10, 2022) (holding material that was "a matter of public record" was "part of the pleadings" because it was referred to in complaint and central to claims).

This includes T-Mobile's own retail website, links from "BannedSeniors.com" to T-Mobile's retail website, and the contents of those pages. *See Gemstar Grp. USA, Inc. v. Ferragamo USA, Inc.*, No. H-08-1822, 2008 WL 4858363, at *7, n.40 (S.D. Tex. Nov. 10, 2008) (considering defendant's website, information posted on defendant's website, links on defendant's website, and the destination of those links to assess jurisdictional contacts); *see also Joganik v. E. Tex. Med. Ctr.*, No. 6:19-cv-517-JCB-KNM, 2021 WL 6694455, at *11 (E.D. Tex. Dec. 14, 2021) (taking judicial notice of contents of defendant's website); *Garteiser Honea, P.C. v. Moskowitz*, No. 2:18-cv-00372-JRG, 2018 WL 6617780, at *2 (E.D. Tex. Dec. 18, 2018) (same). It also includes public records, news coverage, SEC filings, and pleadings from other lawsuits—including T-Mobile's pleadings in this District. *See* Doc. 21, Resp. at 4–5, 7–8.

T-Mobile's response is merely asking the Court to disregard material that is subject to judicial notice. Doc. 27, Reply at 4. If AT&T were urging the Court to judicially notice the truth of unsubstantiated facts from illegitimate sources, T-Mobile's argument might have legs. But that isn't the case. Instead, AT&T asks the Court to consider material that was either created by T-Mobile, sourced from T-Mobile, or corroborated by T-Mobile's own statements. *See* Doc. 21, Resp. at 4–5, 7–8. Ignoring this material, which underscores the extent of T-Mobile's Texas contacts, has no basis in the law or principles of fairness.

4

For instance, T-Mobile argues that the Court should not consider contacts detailed in its Form 10-K. Doc. 27, Reply at 4. But in that filing, T-Mobile represents that Frisco is one of only three locations in the United States where it maintains *corporate* offices:

> Through the Merger, we acquired leases of real property, including cell sites, switch sites, dark fiber, retail stores and office facilities.
>
> As of December 31, 2020, we owned and leased:
>
> - Approximately 108,000 macro towers and 69,000 distributed antenna system and small cell sites;
> - Approximately 3,400 T-Mobile and Metro by T-Mobile retail locations, including stores and kiosks ranging in size from approximately 100 square feet to 17,000 square feet;
> - Office space totaling approximately 1.3 million square feet for our corporate offices located in Bellevue, Washington. We use these offices for engineering and administrative purposes;
> - Office space totaling approximately 2.0 million square feet for our corporate offices located in Overland Park, Kansas and Frisco, Texas. We use these offices for administrative purposes; and
> - Office space throughout the U.S., totaling approximately 3.0 million square feet, for use by our regional offices primarily for administrative, engineering and sales purposes.

https://s29.q4cdn.com/310188824/files/doc_financials/2020/ar/TMUS-2020-Annual-Report.pdf (last visited Sept. 30, 2020) (emphasis added); https://sec.report/Document/0001283699-21-000039/ (last visited Sept. 30, 2020).

Worse still is T-Mobile's failure to even mention its repeated consent to jurisdiction in Texas and the Eastern District. *See* Doc. 21, Resp. at 17–18, n.3. This is especially egregious given T-Mobile's admission less than two years ago that it "engage[s] in systematic and continuous business activities" in Texas. *Cedar Land Tech, Inc. v. T-Mobile USA, Inc.*, No. 6:20-cv-00988-ADA (W.D. Tex.) Doc. 14, Answer ¶ 5.

The Court should consider all the sources referenced in AT&T's response, which make plain T-Mobile's Texas contacts and leave no doubt that it is both "at home" in Texas and should reasonably anticipate being haled into court here for its conduct.

5

## II. T-Mobile is subject to general jurisdiction.

T-Mobile contends that it cannot be subject to general jurisdiction because "no case since *Daimler*" has found "general jurisdiction over a corporation where it was neither incorporated nor headquartered in Texas." Doc. 27, Reply at 2. T-Mobile is incorrect.[2]

For general jurisdiction, AT&T has to make a *prima facie* showing that T-Mobile has a continuous, systematic and physical presence in Texas that, considered in context with T-Mobile's activities as a whole, renders it "at home" here. *Frank*, 947 F.3d at 339–40; *Nunes*, 582 F. Supp.3d at 396–97. The circumstances here warrant such a finding—particularly given T-Mobile's prior admissions in litigation in Texas and its corporate presence here.

Aside from its flawed legal point on decisions post-*Daimler*, T-Mobile has no real answer to the expansive and persistent Texas contacts detailed in AT&T's response. Doc. 21, Resp. at 3–8. Instead, T-Mobile identifies each contact in isolation and argues that the specific contact alone is not enough for general jurisdiction. Doc. 27, Reply at 2–5. When determining general jurisdiction, however, a defendant's forum contacts are not assessed individually but "measured *in toto*." *Allen v. Noah Precision, LLC*, No. 4:14-cv-611-KPJ, 2016 WL 6476951, at *4 (E.D. Tex. Nov. 2, 2016).

---

[2] *Del Castillo v. PMI Holds. N. Am. Inc.*, No. 4:14-cv-3435, 2015 WL 3833447, at *3–4 (S.D. Tex. June 22, 2015) (noting defendant "relie[d] heavily on the recent *Daimler* case in arguing against general jurisdiction" before holding that the plaintiff had "at least made a *prima facie* showing that [defendant] had, by virtue of its Houston office and Texas agent for service of process, 'continuous and systematic' contacts with the state that 'render it essentially at home' here"); *PetroSaudi Oil Servs. Ltd. v. Hartley*, 617 S.W.3d 116, 134–41 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (holding defendant was subject to general jurisdiction post-*Daimler* and post-*Tyrell* because its physical presence in Texas was "akin to a 'general business office' that rendered it "at home" here).

And measured *in toto*, T-Mobile's contacts leave no doubt that it is subject to general jurisdiction here. T-Mobile operates a vast network of towers and infrastructure in Texas, has hundreds of physical locations and thousands of employees here, sells products and services to Texans, pays Texas taxes, and maintains Texas permits and registrations. Doc. 21, Resp. at 3–8. In consenting to personal jurisdiction in other litigation, T-Mobile has admitted that it "engage[s] in systematic and continuous business activities" in Texas. *Cedar Land Tech, Inc. v. T-Mobile USA, Inc.*, No. 6:20-cv-00988-ADA (W.D. Tex.) Doc. 14, Answer ¶ 5. And T-Mobile's SEC filings identify Texas as one of three corporate hubs. *See supra*. Through these contacts, T-Mobile is at home in Texas and its motion should be denied. *See Del Castillo*, 2015 WL 3833447, at *3–4; *PetroSaudi*, 617 S.W.3d at 134–41.

### III. T-Mobile is subject to specific jurisdiction.

T-Mobile claims it is not subject to specific jurisdiction for two reasons: (1) "BannedSeniors.com" merely links to a retail page but does not sell products itself; and (2) relying on the same media libel opinions as in its opening brief, "BannedSeniors.com" does not target Texas. Doc. 27, Reply at 6–9. Neither argument holds water.

### A. T-Mobile cannot shield itself from liability by posting false advertisements to websites that link to its own retail page.

The main argument in T-Mobile's reply is a shell game suggesting that because consumers cannot purchase phones and plans directly from "BannedSeniors.com" but must instead click a link to "Shop T-Mobile's 55+ plans now" directing them to T-Mobile's retail site, "BannedSeniors.com" is a static website that cannot support specific jurisdiction. Doc. 27, Reply at 6–7. Here too, T-Mobile is mistaken.

For starters, T-Mobile's theory would work absurd results and offers a simple roadmap for would-be false advertisers to shield themselves from liability: (1) set up a stand-alone URL; (2) publish otherwise actionable false claims and advertisements; and (3) link to their own retail site but do not sell on the false advertising page itself. So long as sales are a click away from falsity, deceived consumers and harmed competitors can bring suit only where the false advertiser is "at home." This is not the law.

T-Mobile's claim also misconstrues the authority on which it relies. While T-Mobile asserts that a company's link *to its own retail page* insulates it from jurisdiction, the cases it cites involve static websites linking to *unrelated third-party sites, such as Amazon. See World Triathlon Corp. v. Zefal, Inc.*, No. 8:05-cv-659-24 MAP, 2006 WL 4690989, at *2, 6 (M.D. Fla. Apr. 18, 2006) (finding defendant's website could not support jurisdiction based on link to retail site that was "not owned, operated, or maintained by" defendant); *Novak*, 309 F. Supp. 2d at 456 (observing that link to third parties' "unrelated websites"—"such as Amazon.com"—that "sell goods" did not "itself . . . provide grounds for personal jurisdiction").

These opinions track the basic principle that jurisdiction must arise out of contacts "that the defendant himself creates with the forum state." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citations omitted). In other words, imputing the interactivity of a third party's retail site and activities would violate due process. But that concern is not present when, as here, the link is to the defendant's *own* retail operations.

This Court's opinion in *Luci Bags* crystallizes that distinction. 2017 WL 77943, at *4. There, a direct sales company that had been sued for, among other things, false

advertising under the Lanham Act claimed it was not subject to personal jurisdiction because it sent a static, nationwide email to customers. *Id.* at *1–4. The email, however, "provided a link" *to the defendant's own* "order form specifically for" the product advertised. *Id.* at *4. Based on that distinction, the Court rejected the defendant's characterization of its conduct "as a two-step process that insulates it from jurisdiction anywhere besides its home state," found the defendant's email was "more than passive" under the *Zippo* scale, and held that the defendant was subject to specific jurisdiction. *Id.* at *4.

So too here. There is no dispute that T-Mobile owns and operates "BannedSeniors.com." That website falsely advertises to Texans that AT&T has "banned" senior discounts outside of Florida and links to T-Mobile's own retail page to solicit new customers. T-Mobile should thus reasonably expect to be haled into court in Texas for its conduct. *See, e.g., id.*

### B. "BannedSeniors.com" targets Texas.

T-Mobile's reply concedes that—as AT&T argued in its response—the Court's jurisdictional analysis is not limited to the *Calder* effects test. Doc. 27, Reply at 8; *see also Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2003) (noting "the 'effects' test" is non-exclusive and should "be considered as part of the full range of the defendant's contacts with the forum"); *Johnson v. TheHuffingtonPost.Com, Inc.*, 21 F.4th 314, 319–20 (5th Cir. 2021) (noting claim-specific contacts are broader when, as here, the claim involves the sale of good and services rather than a pure libel claim), *pet. for cert. filed* (July 28, 2022). Yet even under the effects test, T-Mobile is subject to jurisdiction because

9

"BannedSeniors.com" targets Texas—a fact AT&T expressly alleges and that T-Mobile has not rebutted. Doc. 1, Compl. ¶ 17.

"BannedSeniors.com" is *not* a traditional "nationwide" advertisement. Rather, it is a geographically focused campaign that falsely claims AT&T "banned" senior discounts in every state but Florida—including Texas. There is no requirement that a false advertisement target just one state, or several states to the exclusion of others, to establish specific jurisdiction. To the contrary, "minimum contacts may be established even if Texas was not a significant part of" T-Mobile's scheme. *Luci Bags*, 2017 WL 77943, at *4. If T-Mobile "did not want to be subject to suit," it could have "excluded Texas from ["BannedSeniors.com"], or taken other preventative measures." *Id.* But it did not and chose instead to target Texas and Texans with its false advertising. As a result, T-Mobile subjected itself to personal jurisdiction here.

## CONCLUSION

AT&T has made a *prima facie* showing of general and specific jurisdiction over T-Mobile that T-Mobile has failed to rebut. For either or both reasons, the Court should deny T-Mobile's motion to dismiss.

Respectfully submitted,

By: */s/ Pete Marketos*
   Pete Marketos
    State Bar No. 24013101
    pete.marketos@rm-firm.com
   Tyler J. Bexley
    State Bar No. 24073923
    tyler.bexley@rm-firm.com
   Jamison M. Joiner
    State Bar No. 24093775
    jamison.joiner@rm-firm.com

**REESE MARKETOS LLP**
750 N. Saint Paul St., Suite 600
Dallas, Texas 75201-3202
214.382.9810 telephone
214.501.0731 facsimile

**ATTORNEYS FOR PLAINTIFF AT&T MOBILITY LLC**

## CERTIFICATE OF SERVICE

    The undersigned certifies that, on October 5, 2022, the foregoing document was submitted to the clerk of the U.S. District Court, Eastern District of Texas, using the electronic case filing system (CM/ECF) of the court. I certify that the document was served on all known counsel of record electronically as authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Pete Marketos*
Pete Marketos