# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| AT&T MOBILITY LLC, | § § | |
| *Plaintiff,* | § § | Civil Action No. 4:22-cv-00760 |
| | § | Judge Mazzant |
| v. | § § | |
| T-MOBILE USA INC., | § § | |
| *Defendant.* | § § | |

### **MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiff AT&T Mobility LLC's Application for Preliminary Injunction (Dkt. #3) and Defendant T-Mobile USA Inc.'s Motion to Dismiss the Complaint Pursuant to Rule 12(b)(2) (Dkt. #18). Having considered the motions and the relevant pleadings, the Court finds that Defendant's Motion to Dismiss the Complaint Pursuant to Rule 12(b)(2) (Dkt. #18) should be **DENIED**.[1]

### BACKGROUND

This case involves allegations of false advertising between two of the nation's three largest wireless carriers. Plaintiff AT&T Mobility LLC ("AT&T") is a Delaware corporation with its principal place of business in Atlanta, Georgia (Dkt. #1 ¶ 13). Defendant T-Mobile USA Inc. ("T-Mobile") is a Delaware corporation with its principal place of business in Bellevue, Washington (Dkt. #1 ¶ 14). AT&T alleges that T-Mobile is "registered to do business in the State of Texas" and that it "does business in the State of Texas" (Dkt. #1 ¶ 16). In fact, it is largely undisputed that T-Mobile does significant business in Texas. As AT&T alleges, T-Mobile employs "hundreds if not thousands of Texans," maintains a Texas registered agent, pays Texas franchise taxes, and

---

[1] The Court will address AT&T Mobility LLC's Application for Preliminary Injunction (Dkt. #3) in a separate order.

has an extensive physical presence in Texas, which includes cell towers, hundreds of retail stores, and a corporate office in Frisco (Dkt. #21 at pp. 3–8).

I.      **Factual Background**

By their own admissions, T-Mobile and AT&T are engaged in a "fierce," ongoing competition to grow their respective customer bases (Dkt. #1 ¶ 1). Given the significant extent to which wireless phones have penetrated American consumer markets, the competition between the parties is largely a "switching game" in which both parties attempt to attract the other's existing customers (Dkt. #25 at pp. 28–29). [2]

As a part of that "switching game," T-Mobile launched its "Banned Seniors" advertising campaign in August 2022 (Dkt. #19 at p. 1). "Banned Seniors" is a nationwide marketing and advertising initiative intended to attract customers over the age of fifty-five (Dkt. #1 ¶ 26). It consists of a website, www.BannedSeniors.com (the "Website"), which states that AT&T only offers its senior discount plan to residents of Florida. According to the Website, 92% of seniors in the United States cannot get a wireless discount from AT&T because they do not live in Florida (Dkt. #1 ¶ 6). The Website includes a graphic that presents interested seniors outside of Florida with three options for obtaining a "55+ Discount": (1) Switch to T-Mobile; (2) Move to Florida; or (3) Get a Virtual Florida Mailbox (Dkt. #1 ¶ 24). Below the "Switch to T-Mobile" graphic, there is a link that redirects the user to T-Mobile's main website.[3]

The Website also includes a comparative map of the continental United States that

---

[2] This testimony comes from the hearing on AT&T's Application for Preliminary Injunction held on September 23, 2022 (Dkt. #25). In determining whether it has personal jurisdiction, the Court may consider the entire contents of the record before it. *See, e.g.*, *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343–44 (5th Cir. 2002) ("In making its [personal jurisdiction] determination, the district court may consider the contents of the record before the court at the time of the motion, including affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery") (internal quotations omitted).

[3] There are similar links below the "Move to Florida" and "Get a Virtual Mailbox" graphics, which direct the user to the website of a Fort Lauderdale-based realtor and three different virtual mailbox companies, respectively.

highlights the states in which T-Mobile and AT&T offer "discounted 55+ plans" (Dkt. #1 ¶ 25). In that map, Florida is the only state in which customers can receive AT&T's "discounted 55+ plan," while T-Mobile is shown offering discounts in each of the lower forty-eight states.

AT&T contends that the core premise of the Banned Seniors campaign is false. According to AT&T, rather than banning any discounts, it offers them to senior citizens across the country through the American Association of Retired Persons ("AARP") (Dkt. #1 ¶¶ 8–10) ("[T]hrough AARP, AT&T offers millions of seniors across *every state* discounts on monthly service charges and activation fees.") (emphasis in original).

## II.  Procedural History

On September 6, 2022, AT&T brought this case in which it alleges that T-Mobile violated § 43(a) of the Lanham Act by making false advertisements on the Website (Dkt. #1 ¶ 27). Specifically, AT&T alleges that T-Mobile's claims that AT&T bans senior discounts and that "92% of seniors in the U.S. can't get a wireless discount from Verizon or AT&T because they don't live in Florida" are literally false (Dkt. #1 ¶¶ 8, 20). AT&T also filed an application for preliminary injunction on the same day that it filed its original complaint (Dkt. #3).

On September 16, 2022, T-Mobile filed the present motion to dismiss for lack of personal jurisdiction (Dkt. #18). On September 20, 2022, AT&T filed its response (Dkt. #21). On September 28, 2022, T-Mobile filed its reply (Dkt. #27). On October 5, 2022, AT&T filed its sur-reply (Dkt. #28).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's

burden to establish that *in personam* jurisdiction exists. *See, e.g.*, *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

To satisfy that burden, the party seeking to invoke the Court's jurisdiction must "present sufficient facts as to make out only a *prima facie* case supporting jurisdiction," if a court rules on a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)). Thus, courts accept a plaintiff's non-conclusory, uncontroverted allegations as true, and resolve factual conflicts contained in the parties' affidavits in the plaintiff's favor. *See, e.g.*, *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

## ANALYSIS

### I. Personal Jurisdiction

T-Mobile asks the Court to dismiss AT&T's claims for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

The Court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020). First, absent a controlling federal statute regarding service of process, the Court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* Second, the Court must determine whether the exercise of personal jurisdiction is consistent with due process under the United States Constitution. *Id.*

Here, AT&T asserts a single cause of action under a federal statute—the Lanham Act,

which does not authorize nationwide service of process. *See be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (citing *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004)). Accordingly, the Court may exercise personal jurisdiction over T-Mobile only to the extent authorized by Texas's long-arm statute and the Due Process Clause. The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). The sole question, then, is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).

The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Those minimum contacts can "be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." *See, e.g.*, *Frank*, 947 F.3d at 336. Specific jurisdiction exists only when the plaintiff's claim against a non-resident defendant arises out of or relates to activities that the defendant purposefully directed at the forum state. *Alpine View Co.*, 205 F.3d at 215 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Likewise, general jurisdiction exists only when the defendant's contacts with the forum are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations., S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

AT&T argues that both specific and general jurisdiction exist here (Dkt. #21 at pp. 1–2). The Court begins with the question of specific jurisdiction.

### A. Specific Jurisdiction

Specific jurisdiction is proper when a plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *See, e.g.*, *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021). In evaluating whether due process permits the exercise of specific jurisdiction, courts consider: (1) whether the defendant has "purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

For there to be minimum contacts, a defendant must have "purposefully availed himself to the benefits and protections of the forum state such that he should reasonably anticipate being haled into court there." *Carmona*, 934 F.3d at 193 (internal quotations omitted). The purposeful availment requirement is the "constitutional touchstone" of personal jurisdiction. *Burger King*, 471 U.S. at 474. Additionally, "the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers Squibb Co. v. Super. Court of Cal.*, 137 S. Ct. 1773, 1780 (2017) (cleaned up) (emphasis in original). That is, in determining whether specific jurisdiction is proper, the Court's focus is on "the relationship between the defendant, the forum, and the litigation." *In re Chinese-Manufactured Drywall Products Liab. Litig.*, 753 F.3d 521, 529 (5th Cir. 2014).

If the plaintiff successfully satisfies the first two prongs of the specific jurisdiction analysis, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271. "It is rare to say the assertion of jurisdiction is

6

unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

### 1. Purposeful Availment

The first prong of the specific jurisdiction analysis requires the Court to analyze purposeful availment—the "constitutional touchstone" of personal jurisdiction. *Carmona*, 924 F.3d at 193 (quoting *Burger King*, 471 U.S. at 474). This requirement ensures that a defendant will not be "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)).

AT&T argues that T-Mobile purposefully avails itself of the privilege of conducting business in Texas through its extensive in-state operations and the Website, which AT&T characterizes as an interactive, commercial site that specifically targets Texas (Dkt. #21 at pp. 9–14). T-Mobile responds by characterizing the Website as a passive advertisement that does not target Texas any more than any other state (Dkt. #27 at pp. 5–8).

These arguments present the Court with two related questions: (1) whether the Website is interactive as classified under the *Zippo* framework and (2) whether T-Mobile has specifically directed its activities to Texas. The Court turns first to the question of the Website's interactivity.

#### a. The Website's Interactivity

In assessing the existence or absence of purposeful availment based on the Internet, the Fifth Circuit has adopted the framework set forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). *Admar*, 18 F.4th at 786 ("To assess the existence or absence of purposeful availment based on activities on the Internet, this court has adopted the

7

framework set forth in [*Zippo*]"). The *Zippo* framework categorizes internet use into a spectrum of three categories:

> At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which involve the knowing and repeated transmission of computer files over the Internet. In this situation, personal jurisdiction is proper. At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate. In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website.

*Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999) (quoting *Zippo*, 952 F. Supp. at 1124) (cleaned up).

AT&T characterizes the Website as satisfying the "high-end of the *Zippo* sliding scale" (Dkt. #21 at p. 10). In support of this characterization, AT&T argues that consumers can use the link found under the "Switch to T-Mobile" graphic to navigate to T-Mobile's main page, where they can then "shop for wireless plans, wireless phones, and accessories" (Dkt. #21 at p. 10). On the other hand, T-Mobile characterizes the Website as completely passive because it merely advertises that its senior discounts exist using "static graphics or banners on the Website" (Dkt. #27 at p. 6).

The Court concludes that the Website falls on the interactive end of the *Zippo* spectrum. True, the Website lacks some of the indicia of a website occupying the high end of the *Zippo* spectrum—potential customers cannot purchase products or create accounts directly from the Website itself. *Cf. Mink*, 190 F.3d at 337 (citing *Zippo*, 952 F. Supp. at 1125–26). But, as AT&T points out, the Website still has interactive components—namely, its link to T-Mobile's main page,

8

from which customers can create accounts, contact T-Mobile customer service, purchase products, and sign up for cellular service (Dkt. #21 at p. 10).

Although the Fifth Circuit has not addressed this issue, district courts (including this Court) have held that a link to a related website that is owned by the defendant classifies a website as something "more than passive" on the *Zippo* scale. *See, e.g.*, *Luci Bags LLC v. Younique, LLC*, No. 4:16-CV-00377, 2017 WL 77943, at *4 (E.D. Tex. Jan. 9, 2017) (noting that an email containing a link to defendant's order form was "more than passive"); *Enter. Rent-A-Car Co. v. U-Haul Int'l., Inc.*, 327 F. Supp. 2d 1032, 1044 (E.D. Mo. 2004) (holding that a website containing a link to an interactive website that was "mutually linked" and "interrelated in nature and purpose" was sufficiently interactive to support a finding of jurisdiction). These decisions are rooted in sound logic. After all, as AT&T argues, to hold otherwise would allow false advertising defendants to insulate themselves from personal jurisdiction so long as they publish their false or misleading statements on a website that merely redirects to another website—even if they also own and operate the linked website (Dkt. #28 at p. 8). This cannot be. *See Luci Bags*, 2017 WL 77943, at *3 (rejecting defendant's attempt to "insulate[] [itself] from jurisdiction anywhere besides its home state").

Ultimately, the Website contains a link to T-Mobile's website, which is highly interactive and related to the Website in nature and purpose. The linked website is highly interactive because it allows T-Mobile to "enter[] into contracts with [Texas] residents" and conduct business in this state. *Zippo*, 952 F. Supp. at 1124. Moreover, it is related to the Website in nature and purpose because it effectively operates in tandem with the Website. It is through the linked website that potential customers can act on the Website's invitation and "switch to T-Mobile" (Dkt. #1 ¶ 24).

Thus, because the Website contains a link to T-Mobile's highly interactive and related website, the Court finds that it is "more than passive." *Luci Bags*, 2017 WL 77943, at *4.

### b.     T-Mobile's Texas Contacts

Ultimately, *Zippo* seeks to answer one question:  Has the defendant specifically targeted the forum state? *Admar*, 18 F.4th at 786.  It is "essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 222 (5th Cir. 2012).

Here, AT&T alleges that T-Mobile avails itself of the privilege of conducting business in Texas through its extensive in-state contacts, which include the Website, T-Mobile's physical presence, and the income that T-Mobile generates from Texas residents (Dkt. #1 ¶ 17).  T-Mobile argues that purposeful availment is lacking here because there is no indication that its advertising targets Texas more than it targets any other state (Dkt. #27 at pp. 7–8).

In raising this argument, T-Mobile relies on a pair of Fifth Circuit cases that stand for the proposition that a defendant has not purposefully availed itself to a forum state merely because its website is accessible in the forum state. *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320–21 (5th Cir. 2021); *Admar*, 18 F.4th at 786.  In *Johnson*, the Fifth Circuit held that there was no specific jurisdiction over a defendant in a defamation action merely because the defendant's nationally accessible website was accessible in Texas.  21 F.4th at 320–21.  Similarly, in *Admar*, the Fifth Circuit made clear that "[m]erely running a website that is accessible in all [fifty] states, but that does not specifically target the forum state, is not enough to create the minimum contacts necessary to establish personal jurisdiction in the forum state under [*International Shoe*]."  18 F.4th at 785.

To be sure, if AT&T's allegations were limited to the fact that the Website is accessible in Texas, both *Johnson* and *Admar* would compel the conclusion that specific jurisdiction is lacking here. But the Court finds that the facts of this case are distinguishable from *Johnson* and *Admar*. Missing in both of those cases was any evidence that the defendants had any case-relevant ties to the forum state aside from their websites. *Johnson*, 21 F.4th at 316 (noting that the defendant had "no physical ties to Texas," "no office in Texas," and no employees in Texas); *Admar*, 18 F.4th at 785 (noting that the defendant had no offices, salespeople, or stores in the forum state and that it had sold no products there). And, in both cases, there was no indication that either defendant specifically targeted the forum state. *Johnson*, 21 F.4th at 326; *Admar*, 18 F.4th at 787. In contrast, AT&T alleges that T-Mobile has used the Website to engage in commercial transactions with Texas residents, and that it has gained income from those Texas residents (Dkt. #1 ¶ 17). Further, AT&T alleges that T-Mobile has used its extensive physical ties to this state, which include hundreds of retail stores and a corporate office, to sign up Texans who have been influenced by the Website's advertisements (Dkt. #1 ¶ 17). Based on these allegations, the Court concludes that AT&T has made a *prima facie* showing that T-Mobile specifically targets Texas. *Cf. Admar*, 18 F.4th at 787.

Moreover, as this Court has previously held, defendants "purposefully direct their activities to forum residents when [they] generate income from forum residents." *Andra Grp., LP v. BareWeb, Inc.*, No. 4:17-CV-00815, 2018 WL 2848985, at *6 (E.D. Tex. June 11, 2018) (citing *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 427–29 (7th Cir. 2010)). Indeed, "when defendants perform additional acts to purposefully avail themselves of the forum state, such as advertising, conducting business transactions with residents of the forum state, and soliciting funds from residents in the forum state, there is sufficient support to find [specific] personal jurisdiction

over the defendants." *Id.* at *6 (quoting *Autobytel, Inc. v. Insweb Corp.*, No. 2:07-CV-524, 2009 WL 901482, at *2 (E.D. Tex. March 31, 2009)) (cleaned up).  Here, AT&T claims that T-Mobile, a company that does substantial business in Texas, is generating income from citizens in this state as a result of the advertisements on the Website (Dkt. #1 ¶ 17).  Accordingly, there is sufficient support to exercise specific jurisdiction over T-Mobile.  *Andra Grp.*, 2018 WL 2848985, at *6.

Ultimately, the "touchstone" question of purposeful availment asks whether T-Mobile "should reasonably anticipate being haled into court" in Texas.  *Carmona*, 924 F.3d at 193.  AT&T alleges that, as part of its regular business, T-Mobile maintains a significant physical presence in Texas, employs thousands of Texans, and advertises and sells its products to citizens of this state (Dkt. #21 at pp. 3–8).  And, as noted above, AT&T alleges that T-Mobile uses those physical ties in tandem with the Website to induce Texas residents to switch from AT&T to T-Mobile (Dkt. #1 ¶ 17).  These activities are not "random, fortuitous, or attenuated."  *Burger King*, 471 U.S. at 475.  Rather, they represent a concerted effort by T-Mobile to "reach[] out beyond" its home of Delaware and Washington to intentionally "exploit a market" in Texas.  *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  And so, the Court finds that T-Mobile's activities exploit the benefits and protections of Texas such that it could reasonably anticipate being haled into court here.  *Carmona*, 924 F.3d at 193.

    **2.**    **Relatedness**

Due process also requires that "the litigation results from alleged injuries that 'arise out of or relate to'" the activities associated with the availment.  *Burger King*, 471 U.S. at 472–73.  A court may exercise specific jurisdiction over a non-resident defendant only when a "sufficient nexus" exists "between the [defendant]'s contacts with the forum and the cause of action." *Clemens v. McNamee*, 615 F.3d 374, 378–79 (5th Cir. 2010).  As the Supreme Court has recently

clarified, "arise out of" and "relate to" are two separate methods of evaluating the connection between forum and controversy. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) ("[O]ur most common formulation of the rule demands that the suit arise out of *or relate* to the defendant's contacts with the forum. The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing.") (internal citations omitted) (emphasis in original).

AT&T contends that its false advertising claim arises out of or relates to T-Mobile's extensive contacts in Texas because it is through those contacts that Texans follow through on the Website's invitation to "switch to T-Mobile" (Dkt. #21 at pp. 16–17). T-Mobile argues that specific jurisdiction is lacking because the Website is accessible everywhere and T-Mobile's other Texas contacts do not "give rise" to AT&T's false advertising claim (Dkt. #27 at pp. 9–10). The Court finds that AT&T has plausibly alleged the sufficient nexus required for specific jurisdiction.

The heart of AT&T's claim for false advertising is that T-Mobile is using allegedly false statements on the Website to attract customers in Texas and to compete with AT&T (Dkt. #1 ¶ 17). According to AT&T, there is a specific relationship between the advertisements on the Website and T-Mobile's physical ties to Texas because T-Mobile uses those ties to attract and service these new customers. The Court is satisfied that AT&T's claim is sufficiently related to T-Mobile's Texas-related contacts. *See Ford Motor Co.*, 141 S. Ct. at 1028; *Savvy Rest, Inc. v. Sleeping Organic, LLC*, No. 3:18-CV-00030, 2019 WL 1435838, at *6 (W.D. Va. Mar. 29, 2019) (concluding that plaintiff's false advertising claims arose from defendant's forum-related activities when the defendant "used false or misleading representations" to sell products in the forum state). Therefore, the Court finds that AT&T has alleged a sufficient nexus between its false advertising claim and T-Mobile's Texas contacts. *Clemens*, 615 F.3d at 378–79.

### 3. Fair and Reasonable

Because AT&T has made a *prima facie* showing of minimum contacts, the Court must now determine if personal jurisdiction would violate the notions of "fair play" and "substantial justice." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). T-Mobile must make a "compelling case" that the assertion of jurisdiction would not be fair or reasonable. *Burger King Corp.*, 471 U.S. at 477. Because it is highly uncommon for an assertion of jurisdiction to be unfair once minimum contacts have been established, the "fair play and substantial justice" factor is rarely outcome determinative. *Elevacity U.S., LLC v. Schweda*, No. 4:22-CV-00042, 2022 WL 3704537, at *10 (E.D. Tex. Aug. 26, 2022). This case is no exception.

In making this determination, the Court considers the following factors: (1) the burden upon the non-resident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of the several States in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477.

T-Mobile does not address the last three factors, arguing instead that litigating this case in Texas would impose an unfair burden on T-Mobile and that Texas has no interest in this litigation (Dkt. #18 at pp. 12–13). The Court finds both arguments unpersuasive. First, T-Mobile has failed to identify any specific burdens outside of the basic inconvenience on any party to litigation, such as having to travel to Texas for trial. *Conrad Shipyard, L.L.C. v. Franco Marine 1 LLC*, 431 F. Supp. 3d 839, 853 (E.D. Tex. 2020). And, given T-Mobile's extensive Texas-based contacts, including a corporate office in this district, litigation in Texas does not seem particularly burdensome here. *Elevacity*, 2022 WL 3704537, at *11. Second, Texas has a strong interest in protecting in-state consumers from false advertising. *See, e.g.*, *Veracity Rsch. Co. v. Bateman*, No.

14

3:07-CV-2158, 2008 WL 2951910, at *6 (N.D. Tex. Aug. 1, 2008) ("Texas has a substantial interest in protecting its citizens from trademark infringement, unfair competition, and libel").

And so, considering the relevant factors in light of the steep burden that T-Mobile faces here, the Court finds that T-Mobile has not made a compelling case that the Court's assertion of jurisdiction is unreasonable. As such, it does not go against the interests of fair play and substantial justice to allow Texas, a state with which T-Mobile has sufficient minimum contacts, to exercise specific personal jurisdiction over T-Mobile on AT&T's false advertising claim.

### B. General Jurisdiction

Having found that it has specific personal jurisdiction over T-Mobile, the Court need not consider the parties' arguments regarding general jurisdiction. *See, e.g.*, *Terra Nova Scis., LLC v. JOA Oil & Gas Houston*, No. 4:10-CV-844, 2010 WL 2671584, at *3 (S.D. Tex. June 30, 2010); *Satellite Tracking Sys., Inc. v. Logic Prod. Dev. Co.*, No. 4:06-CV-10344, 2006 WL 2844460, at *3 (E.D. Mich. Sept. 29, 2006) ("Having found specific jurisdiction, this Court need not consider whether general jurisdiction can be exercised over Defendant.").

### CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Dismiss the Complaint Pursuant to Rule 12(b)(2) (Dkt. #18) is **DENIED**.

**IT IS SO ORDERED.**

SIGNED this 13th day of January, 2023.

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE