# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| AT&T MOBILITY LLC, | § § | |
| Plaintiff, | § § | Civil Action No. 4:22-cv-00760 |
| | § | Judge Mazzant |
| v. | § § | |
| T-MOBILE USA INC., | § § | |
| Defendant. | § § | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff AT&T Mobility LLC's Application for Preliminary Injunction (Dkt. #3). Having considered the motion and the relevant pleadings, the Court finds that Plaintiff's Application for Preliminary Injunction (Dkt. #3) should be **DENIED**.

### BACKGROUND

This case involves allegations of false advertising between competitors in the wireless communication industry. Plaintiff AT&T Mobility LLC ("AT&T") and Defendant T-Mobile USA Inc. ("T-Mobile") are wireless service providers (Dkt. #3, Exhibit 1 ¶ 4). Both parties do extensive business nationwide, and they are engaged in a "fierce," ongoing competition to grow their customer bases (Dkt. #1 ¶ 1).

### I.    T-Mobile's "Banned Seniors" Campaign

As a part of that competition, T-Mobile launched its "Banned Seniors" advertising campaign in August 2022 (Dkt. #3 at p. 3). "Banned Seniors" is a nationwide marketing and advertising initiative intended to attract customers over the age of fifty-five (Dkt. #1 ¶ 26). It consists of a website, www.BannedSeniors.com (the "Website"), which states that AT&T "ban[s] senior discounts" outside of Florida (Dkt. #19, Exhibit C). According to the Website, "92% of

seniors in the U.S. can't get a 55+ discount from . . . AT&T because they don't live in Florida" (Dkt. #19, Exhibit C).[1] The Website includes a graphic that presents interested seniors outside of Florida with three options for obtaining a "55+ Discount": (1) Switch to T-Mobile; (2) Move to Florida; or (3) Get a Virtual Florida Mailbox (Dkt. #19, Exhibit C).

The Website also includes a comparative map of the continental United States that highlights the states in which T-Mobile and AT&T offer "discounted 55+ plans" (Dkt. #19, Exhibit C). In that map, Florida is the only state in which customers can receive AT&T's "discounted 55+ plan," while T-Mobile is shown offering discounts in each of the lower forty-eight states.

## II.     AT&T's Service Offerings

AT&T offers two discount programs that are relevant to this case. The first is its Unlimited 55+ plan, which AT&T markets as a "special deal for Floridians 55 and over" (Dkt. # 19, Exhibit D). As its name implies, AT&T's Unlimited 55+ plan is restricted to customers who are "55 years of age or over" and have a Florida billing address (Dkt. #19, Exhibit D). It is undisputed that the Unlimited 55+ plan is AT&T's only discount program that is age restricted (Dkt. #25 at p. 63). The second is its "member savings" program for members of the American Association of Retired Persons ("AARP") (Dkt. #19, Exhibit E). AT&T's AARP discount is available to all AARP members irrespective of their age or billing address.

## III.    Procedural History

On September 6, 2022, AT&T brought this case in which it alleges that T-Mobile violated § 43(a) of the Lanham Act by making false advertisements on the Website (Dkt. #1 ¶ 27). AT&T

---

[1] The Website's headline initially stated that "92% of seniors in the U.S. can't get a wireless discount from . . . AT&T because they don't live in Florida" (Dkt. #19, Exhibit B). After AT&T filed this case, T-Mobile modified the Website by including the term "senior" or "55+" before every reference to a "discount" (Dkt #19 at p. 9).

2

also filed an application for a preliminary injunction on the same day that it filed its original complaint (Dkt. #3). On September 16, 2022, T-Mobile filed its response to AT&T's application for a preliminary injunction (Dkt. #19). [2] On September 20, 2022, AT&T filed its reply (Dkt. #22). On September 22, 2022, T-Mobile filed its sur-reply (Dkt. #23). On September 23, 2022, the Court held a preliminary injunction hearing (Dkt. #24).

## LEGAL STANDARD

A party seeking a preliminary injunction must establish the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "is not required to prove its case in full at a preliminary injunction hearing." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Comenisch*, 451 U.S. 390, 395 (1981)). The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## ANALYSIS

AT&T asks the Court to enjoin T-Mobile from continuing its "Banned Seniors" advertising campaign. For the reasons set forth below, the Court denies AT&T's request because it concludes

---

[2] On September 16, 2022, T-Mobile also filed its Motion to Dismiss the Complaint Pursuant to Rule 12(b)(2) (Dkt. #18). Before turning to the merits of AT&T's request for injunctive relief, the Court had to decide the threshold issue of personal jurisdiction. *See, e.g.*, *Enter. In'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470–71 (5th Cir. 1985) ("As we stated long ago in reviewing the injunctive power of the district court: The question of jurisdiction is always vital. A court must have jurisdiction as a prerequisite to the exercise of discretion.") (cleaned up). On January 13, 2023, the Court issued its Memorandum Opinion and Order denying T-Mobile's motion to dismiss (Dkt. #35).

3

that AT&T has failed to carry its burden of demonstrating a substantial likelihood of success on the merits.

I.     **Substantial Likelihood of Success on the Merits**

A plaintiff seeking a preliminary injunction must present a *prima facie* case of its substantial likelihood to succeed on the merits but need not prove that it is conclusively entitled to summary judgment. *See Daniels Health Scis., LLC v. Vascular Health Scis.*, 710 F.3d 579, 582 (5th Cir. 2013). That said, the existence of significant factual conflicts "may create sufficient doubt about the probability of plaintiff's success to justify denying a preliminary injunction." 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.3 (3d ed. 1998); *Marshall Durbin Farms, Inc. v. Nat'l Farmers Org., Inc.*, 446 F.2d 353, 358 (5th Cir. 1971) ("[U]nderstandably, the courts are more cautious about invoking the extraordinary remedy of the preliminary injunction where critical facts are in dispute."). In assessing the likelihood of the plaintiff's success on the merits, the Court looks to "the standards provided by substantive law." *Janvey v. Alguire*, 647 F.3d 585, 596 (5th Cir. 2011).

Here, AT&T asserts a single claim for false advertising under § 43(a) of the Lanham Act. *See* 15 U.S.C. § 1125(a)(1)(B). To prevail on a claim for false advertising under § 43(a), AT&T must establish the following elements:

(1) A false or misleading statement of fact about a product;

(2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers;

(3) The deception is material, in that it is likely to influence the consumer's purchasing decision;

(4) The product is in interstate commerce; and

(5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000) (citing 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:24 (4th ed. 1996)). "The failure to prove the existence of any element of the *prima facie* case is fatal to the plaintiff's claim." *Id.* at 495.

AT&T's ability to establish a substantial likelihood of the merits of its false advertising claim rises and falls on the first element, which requires it show that T-Mobile's advertising is false. *IQ Prods. Co. v. Pennzoil Prod. Co.*, 305 F.3d 368, 375 (5th Cir. 2002). There are two types of actionable false advertisements—those that are literally false and those that are not literally false but likely to "mislead and confuse consumers." *Pizza Hut*, 227 F.3d at 495. "If the statement is shown to be literally false, the court must assume that it actually misled consumers, without requiring any evidence of such deception from the plaintiff." *IQ Prods. Co.*, 305 F.3d at 375. On the other hand, if the statement is misleading or ambiguous, the plaintiff must demonstrate actual deception. *Id.* Here, AT&T argues that the statements at issue are literally false rather than merely misleading, and, therefore, that it need not present evidence of deception to meet its burden on the first element (Dkt. #3 at p. 6). Thus, the threshold question for the Court is whether AT&T has carried its burden of establishing that T-Mobile's advertisements are literally false.

A. **Literal Falsity**

The standard for proving literal falsity is rigorous. *Greater Hous. Transp. Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 699 (S.D. Tex. 2015) (citing *Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1185 (8th Cir. 2011)). "For a statement to be literally false, the statement must be false on its face." *Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*, 389 F. Supp. 3d 507, 511 (S.D. Tex. 2019) (internal citations omitted). A literally false statement is one that is "bald-faced, egregious, undeniable, [and] over the top." *Schering-Plough Healthcare Prod., Inc. v. Schwarz*

*Pharma, Inc.*, 586 F.3d 500, 513 (7th Cir. 2009); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 587 (3d Cir. 2002) (noting that "only an *unambiguous* message can be literally false") (emphasis in original). Thus, "if the language at issue is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Greater Hous. Transp.*, 155 F. Supp. 3d at 700.

The Court does not assess the falsity of a statement in isolation but, rather, "in light of the overall context in which it appears." *Pizza Hut*, 227 F.3d at 496. This means that the Court must "analyze the message conveyed within its full context." *Buetow*, 650 F.3d at 1185. Put differently, the Court "must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other." *Greater Hous. Transp.*, 155 F. Supp. 3d at 700 (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).

AT&T asserts that the Website contains two literally false statements: (1) that AT&T "ban[s]" senior discounts and (2) that "92% of seniors in the U.S. can't get a wireless discount from . . . AT&T unless they live in Florida" (Dkt. #3 at p. 6). According to AT&T, those statements, which are also reflected in the Website's graphics, are literally false because AT&T partners with the AARP—"an interest and advocacy group serving the 50+ population"—to offer discounts to AARP members in every state (Dkt. #3 at pp. 6–7). Ultimately, AT&T argues that the Website "conveys the false message that Florida is the only state in which AT&T customers over 55 can receive discounted wireless service" (Dkt. #3 at p. 8).

Conversely, T-Mobile argues that the statements on the Website are not literally false because it is undisputed that AT&T's Unlimited 55+ plan—which AT&T does not offer outside of Florida—is the only AT&T discount program that is offered exclusively to senior citizens (Dkt. #19 at p. 9). According to T-Mobile, the existence of AT&T's AARP discount does not

6

change the veracity of the statements at issue because AT&T's AARP discount is a "member discount" available to all AARP members, rather than a "senior discount," which T-Mobile defines as a discount that is available to all customers over a threshold age age (Dkt. 19 at p. 9). Ultimately, T-Mobile asserts that its advertisements are true because AT&T chooses not to offer its Unlimited 55+ plan to seniors who do not reside in Florida, whereas T-Mobile offers its comparable senior discount plans across the country (Dkt. #19 at p. 10).

Upon review of the Banned Seniors advertisements in their full context, and considering the parties' briefing and evidence, the Court finds that significant factual disputes prevent it from determining that AT&T is likely to prevail on the merits of its false advertising claim at this stage. *See Goodman v. Dell Publ'g Co.*, No. 94-CV-3028, 1995 WL 301380, at *2 (E.D. La. May 15, 1995) (finding that a factual dispute "preclude[d] the Court from determining the likelihood of success on the merits" and concluding plaintiff therefore "failed to meet her heavy burden" on the likelihood-of-success element); *Marshall Durbin Farms, Inc.*, 446 F.2d at 358. After all, literally false statements are those that are "patently false" and "mean what [they] say[] to any linguistically competent person." *Schering-Plough Healthcare Prod.*, 586 F.3d at 513. But both parties have presented reasonable interpretations of the statements at issue here.

Specifically, the Court finds that two key phrases at the heart of this dispute are subject to multiple reasonable interpretations: the terms (1) "senior discount" and (2) and "ban."

    1.    **"Senior Discount"**

T-Mobile contends that a senior discount is one that is "available to all consumers over a threshold age" (Dkt. #23 at p. 2). In support of this contention, T-Mobile points to several other businesses who advertise senior discount programs as "discounts that are available to any person over a specified age" (Dkt. #23 at p. 2) (citing definitions for "senior discounts" offered by

Marriott, Amtrak, and AMC Theatres). The Court agrees with T-Mobile that this interpretation of the term "senior discount" is reasonable because the term itself necessarily implies that age, rather than membership in any organization, is the sole quality that defines eligibility for the discount. And, in the context of the entire Website, it is undisputed that the only discount that AT&T makes available to any person over a threshold age is its Unlimited 55+ plan, which, as the Website proclaims, is available only to consumers in Florida.

AT&T argues that the Banned Seniors advertisements are literally false because AT&T offers a discount that is available to seniors through the AARP (Dkt. #3 at p. 7). According to AT&T, a "senior discount" is simply "a discount available to seniors," and its AARP discount meets this definition (Dkt. #22 at p. 3). Although the Court agrees with AT&T that its definition of "senior discount" is one reasonable interpretation of the phrase, it is not the only reasonable interpretation. Accordingly, because T-Mobile's use of the term "senior discount" is subject to more than one reasonable interpretation, it does not support a finding of literal falsity. *Greater Hous. Transp.*, 155 F. Supp. 3d at 700.

    2.    **"Ban"**

Likewise, the parties offer competing definitions of the word "ban." AT&T points to Merriam-Webster's dictionary in arguing that the word "ban" means to "prohibit by legal means" or to "prohibit the use, performance, or distribution of" (Dkt. #22 at pp. 2–3). Considering this definition, AT&T argues that T-Mobile's claim that AT&T "bans" senior discounts is literally false because AT&T does not prohibit anyone from receiving its Unlimited 55+ discount—it simply does not offer the discount outside of Florida (Dkt. #22 at p. 2). On the other hand, T-Mobile relies on the Cambridge Dictionary in arguing that "ban" means to "refuse to allow" (Dkt. #23 at p. 4). T-Mobile argues that this definition "describes AT&T's actions" because

8

AT&T refuses to allow customers outside of Florida to obtain the Unlimited 55+ discount (Dkt. #23 at p. 4). Given the competing dictionary definitions offered by both parties, the Court finds that T-Mobile's use of the word ban is not "unambiguously false." *Buetow*, 650 F.3d at 1186 (concluding that a determination of literal falsity cannot be based on "the most absolute of competing dictionary definitions" and that "a district court errs when it ignores the principle that text must yield to context" and "makes a fortress out of the dictionary.") (cleaned up).[3]

When read in context, the statements contained on the Website, including the graphics, can be reasonably interpreted as merely stating that AT&T chooses not to offer its Unlimited 55+ plan—its only discount that is available to all consumers over a threshold age—outside of Florida. This statement is objectively true. Thus, the Court concludes that AT&T has not met the "rigorous" standard for showing that T-Mobile's advertisements are unambiguously false on their face. *Greater Hous. Transp.*, 155 F. Supp. 3d at 699–700.

Because AT&T has not established that the advertisements at issue are literally false, it has failed to carry its burden of demonstrating a substantial likelihood of success on the merits of its false advertising claim. *Pizza Hut*, 227 F.3d at 495. This failure is fatal to AT&T's application for a preliminary injunction. *See, e.g.*, *Nichols*, 532 F.3d at 372 (noting that a preliminary injunction "should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements").

---

[3] AT&T also argues that the Banned Seniors advertisements are literally false because they convey the message that AT&T bans seniors from obtaining "any wireless discounts" (Dkt. #3 at pp. 4–5; Dkt. #25 at pp. 10–11). The Court rejects this argument for two reasons. First, T-Mobile has modified the Website to provide additional context by including the term "senior" or "55+" before every reference to a "discount" (Dkt. #19 at p. 9). Given this additional context, the Court finds that the Website does not unambiguously convey the message that seniors are categorically ineligible for any AT&T discounts. *See Bridal Expo, Inc. v. van Florestein*, No. 4:08-CV-03777, 2009 WL 255862, at *8 (S.D. Tex. Feb. 3, 2009). Second, AT&T's argument does not support a determination of literal falsity because it requires consumers to view the Website's statements and make the inferential leap that AT&T categorically excludes seniors from *all* discount programs. *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1181 (8th Cir. 1998) ("The greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion, however, the less likely it is that a finding of literal falsity will be supported.").

Of course, AT&T can ultimately prevail at trial. But "a preliminary injunction is an extraordinary and drastic remedy" that the Court cannot grant unless AT&T "by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). AT&T has failed to carry its burden here, and, as a result, the Court must deny its application for a preliminary injunction.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Application for Preliminary Injunction (Dkt. #3) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 18th day of January, 2023.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE